UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:20-CV-25259-CMA

EUNICE LOPEZ,

    Plaintiff,

v.

LIFE INSURANCE COMPANY
OF NORTH AMERICA, d/b/a CIGNA,

    Defendant.
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), pursuant to Local Rules 7.1 and 56.1, and Fed. R. Civ. Proc. 56, hereby files its Motion for Summary Judgment as to Plaintiff's Complaint [ECF 1] seeking long-term disability ("LTD") benefits pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). LINA is filing herewith its Statement of Material Facts, which attaches the complete Administrative Record (including the Plan documents and claim file).

### I.    CASE OVERVIEW AND FACTS

Plaintiff, Eunice Lopez ("Plaintiff" or "Ms. Lopez"), seeks long-term disability ("LTD") benefits pursuant to the Brown & Brown, Inc. Long Term Disability Plan (the "Plan"). As a Personal Account Manager employed with Brown & Brown, Inc., Plaintiff was a Class 2 participant in the Plan. Statement of Material Facts ("SMF") ¶ 1.[1] The Plan is a welfare benefits plan governed by ERISA. SMF ¶ 2. Brown & Brown is the Plan Sponsor and Plan

---

[1] LINA's Statement of Material Facts cites to the Administrative Record ("AR") and long term disability plan ("LTD Plan" or "Plan") in support of each fact. Citations herein to the SMF paragraph incorporates the citations to the AR and LTD Plan contained therein.

Administrator. *Id.* The Plan is insured through a group insurance policy issued by LINA to Brown & Brown (the "Policy"). *Id.* LINA is the appointed claim administrator and Claim Fiduciary granted authority and discretion "to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact." SMF ¶¶ 4-5.

Ms. Lopez ceased working on May 14, 2019, at age 38, due to anxiety and depression. SMF ¶¶ 6, 17. She also has a history of migraines; however, her neurologist identified her emotional state as the basis for her work cessation. SMF ¶¶ 7, 17. Ms. Lopez received short-term disability ("STD") benefits pursuant to Brown & Brown's self-insured STD program from May 29 through August 12, 2019. SMF ¶ 9. Ms. Lopez initiated a claim for LTD benefits under the Plan on August 12, 2019. SMF ¶ 11.

In support of her claim for LTD benefits, Ms. Lopez submitted the office notes from her treating neurologist, Dr. Javier Lopez, for five monthly visits spanning May through September 2019. SMF ¶¶ 7, 15. Dr. Lopez also completed Medical Request Forms (MRF) and Behavioral Health Questionnaires (BHQ) on Plaintiff's behalf during the months of May through September. SMF ¶ 16. In May of 2019, Dr. Lopez was under the mistaken impression that Plaintiff was seeing a psychologist (SMF ¶ 17), but Plaintiff never submitted any records from a psychologist or other mental health provider. SMF ¶ 18. A review of the treatment notes reveals that the five office visits were mainly for the purpose of Dr. Lopez monitoring and adjusting Plaintiff's migraine and antidepressant medication. *See* SMF ¶¶ 15, 19-21.

Each of the office visits from July through September show that Ms. Lopez's headaches were well under control and her depression was improving. *See* SMF ¶¶ 19-21. Specifically, Dr. Lopez noted the following:

2

- 7/12/19 – "She reports some improvement in her level of anxiety as well as her mood. … Headaches are substantially better after the addition of Aimovig."  SMF ¶ 19.

- 8/8/19 – "She reports no major changes since last visit. … Mood is better. Depression is improved overall. … some improvement in her level of anxiety as well as her mood. … Headaches are better after the addition of Aimovig. No severe migraine spells have occurred in the last month."  SMF ¶ 20.

- 9/6/19 – "Headaches are generally better. …Recently had an exacerbation of her depression after her efforts to refinance her home failed due to employment situation."

  …

  **Assessments**

  1. Migraine with aura - … Much improved with Aimovig as prophylactic therapy
  …
  5. Depression - … better with current regimen.
  6. Anxiety – [no comments]

SMF ¶ 21.  In addition, in each of the August and September office visits, Dr. Lopez noted that the mental status exams ("MSEs") were normal.  *See* SMF ¶¶ 20-21:

> Mental Status/Higher cognitive functions: … The patient is oriented in all three spheres. Recent and remote memory are normal. Attention span and concentration are normal. Fund of knowledge is adequate for age/educational level.

In conducting its review of Plaintiff's claim for LTD benefits, LINA obtained physician reviews by a board certified psychiatrist, Dr. Aneta Predanic, and a board certified neurologist, Dr. Nizar Souayah.  SMF ¶ 24.  Dr. Predanic reviewed all of Dr. Lopez's office visit notes, MRFs and BHQs and concluded that Plaintiff was not functionally limited and there were "[n]o restrictions medically necessary due to psychiatric condition."  SMF ¶ 25.  Dr. Predanic explained that "[t]he treating provider's opinion is not well supported by medically acceptable clinical diagnostic techniques including mental status examinations, psychological and/or neuropsychological testing and is inconsistent with the other substantial evidence in the claim file," and went on to provide several comparative examples of the lack of support or consistency.

*Id.* Dr. Souayah also review all of Dr. Lopez's office notes, MRFs and BHQs and concluded that "from a neurological standpoint, there is no evidence Ms. Lopez is functionally limited. The claimant's headache condition is stable. … No work restrictions are supported." SMF ¶ 26.

By letter dated November 14, 2019, LINA notified Ms. Lopez that it was denying her claim for LTD benefits. SMF ¶ 27. The letter described the review process, the records received, and the reviews conducted by Dr. Predanic and Dr. Souayah. *Id.* LINA provided the reasons for the denial in detail, including pointing out that she had not submitted any records from a treating psychologist and that Dr. Lopez's psychotropic medication management was not adequate to support a claim for psychiatric impairment. *Id.*

Following receipt of Plaintiff's appeal of the LTD denial, LINA commenced an appeal review of her claim. SMF ¶ 28. On December 5, 2019 and again on February 6, 2020, LINA sent Plaintiff requests that she submit any additional records available to support her claim. SMF ¶ 29. Plaintiff did not submit any new records during the appeal review. SMF ¶ 30. During the appeal process, LINA had Plaintiff's file reviewed by three medical specialists:

- David Burke, MD, Board Certified in Neurology;
- Elbert Greer Richardson, MD, Board Certified in Psychiatry; and
- Roger Belcourt, MD, Board Certified in Occupational Medicine

SMF ¶ 31; *see also* SMF ¶¶ 32-36. On February 6, 2020, LINA sent Plaintiff copies of the medical reviews by the three specialists and invited her to provide any response by March 5, 2020. SMF ¶ 37. Plaintiff did not submit any response. SMF ¶ 38.

Based on his review of the records, Dr. Burke concluded that Plaintiff did not require any medically necessary work restrictions from a neurological standpoint. SMF ¶ 32. Dr. Burke noted that as of the September 6, 2019 office visit with Dr. Lopez, Plaintiff's headaches were generally better and further summarized that:

4

- Muscle strength, Sensation is intact on all examinations by Dr. Lopez in 06/31/19 to 09/06/19.
- Coordination is intact from 06/31/19 to 09/06/19.
- In addition, despite noted migraines with aura, there is no documentation of frequent hospital/ED visits for symptomatic management, headache diary, or further severity indicators.

*Id*.  Dr. Burke attempted to conduct a peer-to-peer discussion with Dr. Lopez but messages left with an office assistant on January 12, 2020 and January 14, 2020 were not responded to.  SMF ¶ 33.

Dr. Richardson stated that Dr. Lopez's "opinion is not well supported by medically acceptable clinical or laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the claim file," and went on to discuss the various records in detail.  SMF ¶ 34.  He noted that while Plaintiff reported ongoing symptoms, her mental status exam findings were within normal limits and her neurological exam indicated no cognitive impairments.  *Id*.  Dr. Richardson further explained that the "documentation provided for review lacks objective evidence to support these symptoms are of a level of severity that would limit functioning, such as active suicidality or homicidally, suicide attempts, psychosis, or psychiatric hospitalizations." *Id.*  He concluded that the medical information provided did "not support psychiatric functional limitations," and "[n]o restrictions are required from the perspective of psychiatry."  *Id*.

Dr. Richardson also attempted to conduct a peer-to-peer discussion with Dr. Lopez. On January 21, 2020 Dr. Richardson was directed by Dr. Lopez's office assistant to submit applicable questions via facsimile to Dr. Lopez's attention. Dr. Richardson did as instructed but did not receive a response at any time prior to LINA's appeal determination on March 5, 2020. SMF ¶ 35.

Dr. Belcourt reviewed the records with attention to Plaintiff's non-neurological and non-psychiatric conditions. SMF ¶ 36. Dr. Belcourt concluded that "[t]here is no documentation of objective functional deficits for which restrictions would be indicated as a result of these conditions" and that "Ms. Lopez does not require any medically necessary work activity restrictions." *Id*.

Based upon LINA's review of the entire file and with consideration of the opinions of the specialist reviewers, LINA determined that the medical evidence provided by Plaintiff did not show a functional impairment sufficient to establish entitlement to LTD benefits under the Plan. SMF ¶ 39. As a result, LINA upheld the decision to deny LTD benefits. *Id*. LINA provided Plaintiff with a detailed explanation for its appeal determination in its March 5, 2020 decision letter. SMF ¶ 40.

Plaintiff obtained legal counsel relating to this claim in April 2020 (AR 678), and filed this action on December 28, 2020.

## II.   ARGUMENT

**A.   ERISA Standard of Review**

In an ERISA disability benefits denial case, "the district court sits more as an appellate tribunal than as a trial court." *Curran v. Kemper Nat. Servs., Inc.*, 2005 WL 894840, at *7 (11th Cir. Mar. 16, 2005)[2] (quoting *Leahy v. Raytheon Co.*, 315 F.3d 11, 17-18 (1st Cir. 2002)); *Dawson v. Cigna Corp.*, 261 F.Supp.3d 1275, 1283 (S.D. Fla. 2017)(quoting *Curran*, 2005 WL 894840, at *7); *Ponce v. Life Ins. Co. of N. Am.*, No. 11-81100-CIV, 2012 WL 4481827, at *4 (S.D. Fla. Sept. 28 2012) (quoting *Curran*, 2005 WL 894840 at *7); *Turner v. Am. Airlines, Inc.*,

---

[2] Although *Curran* is an unpublished Eleventh Circuit decision, which means it is merely persuasive (not binding) authority pursuant to 11th Cir. R. 36-2, according to Westlaw's *KeyCite* feature, it has been cited as persuasive authority in more than 120 district court decisions.

No. 10-80623-CIV, 2011 WL 1542078, at *4 (S.D. Fla. April 21, 2011) (quoting *Curran*, 2005 WL 894840, at *7); *Bloom v. Hartford Life & Acc. Ins. Co.*, 917 F.Supp.2d 1269, 1276 (S.D. Fla. 2013) (citation omitted), *aff'd* 558 F. App'x 854 (11th Cir. 2014); *Crume v. Metro. Life Ins. Co.*, 417 F.Supp.2d 1258, 1272 (M.D. Fla. 2006)(quoting *Leahy*, 315 F.3d at 17-18, and noting approval by *Curran*, 2005 WL 894840 at *7).  The court "does not take evidence, but rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the administrator."  *Curran*, 2005 WL 894840, at *7; *Dawson*, 261 F.Supp.3d at 1283; *Bloom*, 917 F.Supp.2d at 1276; *Ponce*, 2012 WL 4481827, at *4; *Turner*, 2011 WL 1542078, at *4; *Crume*, 417 F.Supp.2d at 1272.

For ERISA claims, "the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure is incongruent with the ERISA standard of review." *Meadows v Am. Airlines, Inc.*, No. 10–22175–CIV-ALTONAGA/Brown, 2011 WL 1102774, at *8  (Mar. 24, 2011) (citing *Pinto v. Aetna Life Ins. Co.*, No. 6:09–cv–01893–Orl–22GJK, 2011 WL 536443, at *8 (M.D.Fla. Feb.15, 2011) (*therein comparing* Fed. R. Civ. P. 56(a) *with Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir.2004), *and Leahy v. Raytheon Co.*, 315 F.3d 11, 17 (1st Cir.2002)); *Martin v. Sun Life Assurance Co. of Canada*, Case No. 12-61009-CIV-WILLIAMS/HUNT, 2014 WL 12531279, at *8 (S.D. Fla. June 25, 2014) (citing *Cook v. Standard Ins. Co.*, 2010 WL 807443 (M.D. Fla. Mar. 4, 2010)).  The usual tests of summary judgment, such as whether genuine disputes of material fact exist, do not apply, but rather "[t]he Eleventh Circuit charges the district court with determining *de novo* whether the administrator's decision was wrong." *Meadows*, 2011 WL 1102774, at *8 (citing *Williams*, 373 F.3d at 1138, and *Pinto*, 2011 WL 536443 at *8); *accord Dawson*, 261 F.Supp.3d at 1283-84; *Turner*, 2011

7

WL 1542078 at *4 (citing *Crume*, 417 F.Supp.2d at 1272); *Martin*, 2014 WL 12531279, at *8 (citing *Crume*, 417 F.Supp.2d at 1272).

The Eleventh Circuit lays out a six-step analysis for reviewing a benefits decision under ERISA:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011); *accord Meadows*, 2011 WL 1102774, at *7-8.[3]  Thus, even if there may be unresolved factual issues in the administrative record, "unless the administrator's decision was wrong, or arbitrary and capricious, these issues will not preclude summary judgment as they normally would." *Meadows*, 2011 WL 1102774, at *8 (citing *Pinto*, 2011 WL 536443 at *8, and *Crume*, 417 F.Supp.2d at 1272-73); *Dawson*, 261 F.Supp.3d at 1283-84 (citing *Pinto* and *Turner)*; *see also Turner*, 2011 WL 1542078, at *4 (citing *Crume*, 417 F.Supp.2d at 1272).

---

[3] *Meadows* cited to the then-existing 6-step test stated in *Williams,* however, shortly after the *Meadows* decision, the Eleventh Circuit updated the 6-step test as stated in *Blankenship.*

### B. Step 1 - LINA's Decision Was Correct

Under the terms of the Plan and Eleventh Circuit precedent, it is the claimant's burden to submit proof sufficient to show entitlement to benefits. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1247 (11th Cir. 2008) (citing *Horton v. Reliance Standard Life Ins. Co.,* 141 F.3d 1038, 1040 (11th Cir. 1998)); LTD Plan 059; *accord Blankenship*, 644 F.3d at 1355. Plaintiff failed to provide sufficient medical or psychological evidence to support her claim for LTD benefits under the terms of the Plan. *See* SMF ¶¶ 15-23, 25-27, 30-38.

The only records submitted by Plaintiff were from her neurologist, Dr. Lopez. SMF ¶¶ 15-16, 18. Plaintiff saw Dr. Lopez once per month during the five months of May through September. SMF ¶ 15. Both Plaintiff and Dr. Lopez identified Plaintiff's mental state, not migraines, as the reason she was unable to work. Specifically, in the September 20, 2019 Disability Questionnaire, Plaintiff described the reason for not working as: "My profession as an insurance agent in Florida is extremely stressful and the current office environment exacerbates the mental stress and worsens my depression and anxiety." SMF ¶ 23. Similarly, Dr. Lopez stated the reason for imposed work restrictions as: "Patient cannot work under stress due to her emotional state." SMF ¶ 17. Dr. Lopez also stated in the summaries of his treatment notes that Plaintiff "is still not currently fit to work due to severe anxiety and depression. She is temporarily disabled as a result of these conditions." AR 414, 428.

In addition to his May 23, 2019 MRF identifying Plaintiff's emotional state as the reason for the work restrictions, Dr. Lopez's office notes show that Plaintiff's migraines were under control with medication and not a disabling condition. *See* SMF ¶¶ 17, 19-21. In his July 12, August 8, and September 6 office notes, Dr. Lopez reported that Plaintiff's headaches were "substantially" and "generally" better, and stated in the August 8, 2019 note that Plaintiff had not

had any severe migraine spells for the last month. *See* SMF ¶¶ 19-21. In the September 6, 2019 office note, Dr. Lopez described Plaintiff's headaches "are generally better" and "[m]uch improved with Aimovig as prophylactic therapy." SMF ¶ 21.

Dr. Lopez's office note summaries, MRFs and BHQs identified Plaintiff's depression as her main problem. *See* SMF ¶¶ 17, 19-21; *see also* AR 414, 428. However, Dr. Lopez noted improvement in Plaintiff's mental state in his office visit notes of July and August:

- 7/12/19 – "She reports some improvement in her level of anxiety as well as her mood. … Headaches are substantially better after the addition of Aimovig." SMF ¶ 19.

- 8/8/19 – "She reports no major changes since last visit. … Mood is better. Depression is improved overall. … some improvement in her level of anxiety as well as her mood. … Headaches are better after the addition of Aimovig. No severe migraine spells have occurred in the last month. SMF ¶ 20.

SMF ¶ 21. Although Dr. Lopez reported in September that Plaintiff "[r]ecently had an exacerbation of her depression after her efforts to refinance her home failed" he also included in the assessments that her depression was "better with current regimen." SMF ¶ 21.

LINA's LTD denial decision was supported by two physician reviewers: Dr. Aneta Predanic, a board certified psychiatrist; and Dr. Nizar Souayah, a board certified neurologist. SMF ¶¶ 24–26. Dr. Souayah reviewed all of Dr. Lopez's office notes, MRFs and BHQs and concluded that "from a neurological standpoint, there is no evidence Ms. Lopez is functionally limited. The claimant's headache condition is stable. … No work restrictions are supported." SMF ¶ 26.

Dr. Predanic reviewed all of Dr. Lopez's office visit notes, MRFs and BHQs and concluded that there were "[n]o restrictions medically necessary due to psychiatric condition." SMF ¶ 25. Dr. Predanic explained that "[t]he treating provider's opinion is not well supported by medically acceptable clinical diagnostic techniques including mental status examinations,

10

psychological and/or neuropsychological testing and is inconsistent with the other substantial evidence in the claim file," and provided several comparative examples of the lack of support or consistency, including:

- Despite documenting severe depression and anxiety symptoms, even as of 5/13/19 and throughout the records, MSEs are essentially completely normal, indicating Ms. Lopez presents as well appearing, well groomed, with normal speech, awake and alert, fully oriented, with recent/remote memory and attention span/concentration normal. There is denial of suicidal and homicidal thinking, no psychotic symptoms. BHQs document depressed mood and anxious affect, with "preoccupied/pathological" thought content, although this is not clarified/described. These limited MSE abnormalities are inconsistent with presentation of a severe psychiatric condition.

- There is also inconsistency noted between the OVNs documentation of symptom improvements with documentation in 4 BHQs and 3 MRFs that do not reflect any improvements, continuing to assert there's "severe psychomotor depression with anhedonia", Ms. Lopez is "in the midst of a severe bout of depression" and "unable to function in any setting due to the depth of her symptoms".

- Lack of functional impairments are further corroborated by Ms. Lopez' 9/20/19 [Disability Questionnaire], where she reports she is able to cook, clean, launder, read/watch TV, reading, writing and drawing are her hobbies, she does cardio exercise, drives and uses computer/smart phone all the time.

- Finally, there are no records from the treating psychologist, and while Dr. Lopez indicated on 5/13/19 she has not seen a psychiatrist, there were no further referrals to a psychiatrist. Monthly follow-up by Dr. Lopez and lack of aggressive psychotropic meds management are indicators of low severity of treatment, which would not be expected to be adequate, if Cx's psychiatric condition was severe and work precluding.

SMF ¶ 25 (quoting AR 436-37).

It is important to note that Dr. Lopez is a neurologist, not a psychiatrist or psychologist. The Policy, which is incorporated into the Plan, requires the claimant to be receiving Appropriate Care in order to qualify for LTD Benefits:

> **Disability Benefits**
> The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. The Employee **must** satisfy the Elimination Period, **be under the Appropriate Care of a Physician**, and meet all the other terms and conditions of the Policy. He or

11

> she must provide the Insurance Company, at his or her own expense, **satisfactory proof of Disability** before benefits will be paid. The Disability Benefit is shown in the Schedule of Benefits.
>
> The Insurance Company will require continued proof of the Employee's Disability for benefits to continue.

SMF ¶ 13 (emphasis added). Appropriate Care is defined as follows:

> Appropriate Care means the Employee:
> 1. Has received treatment, care and advice from a Physician who is qualified and experienced in the diagnosis and treatment of the conditions causing Disability. If the condition is of a nature or severity that it is customarily treated by a recognized medical specialty, the Physician is a practitioner in that specialty.
> 2. Continues to receive such treatment, care or advice as often as is required for treatment of the conditions causing Disability.
> 3. Adheres to the treatment plan prescribed by the Physician, including the taking of medications.

SMF ¶ 14. Dr. Lopez *believed* Plaintiff was seeing a psychologist as of May 2019. *See* SMF ¶ 17 (5/13/19 office note "is seeing a psychologist but has not seen a psychiatrist"). Plaintiff never submitted any records from a psychologist or other mental health professional to support her claim. SMF ¶¶ 18, 27, 30. This held true even during the appeal review, despite LINA specifically advising Plaintiff in the LTD denial letter:

> Additionally, there are no records from a treating psychologist and there were no further referrals to a psychiatrist. Monthly follow-up by Dr. Lopez and lack of aggressive psychotropic medication management are indicators of low severity of treatment, which would not be expected to be adequate to support a claim of a psychiatric impairment would preclude one from working.

SMF ¶ 27.

LINA's decision to uphold the LTD denial on appeal was also supported by the records, including the reviews and opinions provided by three medical specialists: David Burke, MD, Board Certified in Neurology; Elbert Greer Richardson, MD, Board Certified in Psychiatry; and Roger Belcourt, MD, Board Certified in Occupational Medicine. SMF ¶¶ 31-36. All three

specialists concluded that the records did not support the existence of a disabling condition. *Id.* Not only did Plaintiff never submit any psychological treatment records, but she failed to submit any additional medical records of any sort during the appeal review period. SMF ¶ 30. This was so even though LINA sent her letters on December 5, 2019 and February 6, 2020 requesting she submit any additional records and also inviting her to respond to the reports of the three specialist reviewers. SMF ¶¶ 29-30, 37-38.

Dr. Burke reviewed and discussed Dr. Lopez's office notes and explained the basis for his conclusion that Plaintiff did not require any medically necessary work restrictions from a neurological standpoint. SMF ¶ 32 (*e.g.*, explaining "muscle strength, sensation is intact on all examinations by Dr. Lopez in 06/31/19 to 09/06/19"; "Coordination is intact from 06/31/19 to 09/06/19"; and "despite noted migraines with aura, there is no documentation of frequent hospital/ED visits for symptomatic management, headache diary, or further severity indicators"). Dr. Burke attempted to conduct a peer-to-peer discussion with Dr. Lopez but messages left with an office assistant on January 12, 2020 and January 14, 2020 were not responded to. SMF ¶ 33.

Dr. Richardson also discussed the records in detail in explaining that Dr. Lopez's "opinion is not well supported by medically acceptable clinical or laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the claim file." SMF ¶ 34. Dr. Richardson concluded that the medical information provided did "not support psychiatric functional limitations, and explained that while Plaintiff reported ongoing symptoms, her mental status exam findings were within normal limits, her neurological exam indicated no cognitive impairments, and the "documentation provided for review lacks objective evidence to support these symptoms are of a level of severity that would limit functioning, such as active suicidality or homicidally, suicide attempts, psychosis, or psychiatric hospitalizations." *Id.* Dr. Richardson

also attempted to conduct a peer-to-peer discussion with Dr. Lopez, and on January 21, 2020 submitted a facsimile with questions as per the instructions from Dr. Lopez's office assistant. SMF ¶ 35. However, as of March 5, 2020, no response had been received from Dr. Lopez. *Id.*

Dr. Belcourt reviewed the records with attention to Plaintiff's non-neurological and non-psychiatric conditions. SMF ¶ 36. Dr. Belcourt concluded that "[t]here is no documentation of objective functional deficits for which restrictions would be indicated as a result of these conditions" and that "Ms. Lopez does not require any medically necessary work activity restrictions." *Id*.

The Administrative Record shows that there is overwhelming support for LINA's determination that Plaintiff did not submit satisfactory proof of a disabling condition and its decision to deny benefits was not wrong. Accordingly, pursuant to the Eleventh Circuit's guidance, the Court should end the inquiry at the first step and affirm the decision. *Blankenship*, 644 F.3d at 1355 (advising that under the first step analysis, if the claim administrator's benefits-denial decision is not wrong, the court should "end the inquiry and affirm the decision").

## C.     Step 2 – LINA is Vested with Discretionary Authority

If the Court determines that LINA's denial was *de novo* wrong, the next step is to determine if LINA has discretionary authority to make claims decisions. It does.

The Plan is a welfare benefits plan governed by ERISA. SMF ¶¶ 1-2. Plaintiff's employer, Brown & Brown, Inc., is the Plan Sponsor and the Plan Administrator. *Id.* ERISA requires that a summary plan description be created and furnished to participants. *Curran*, 2005 WL 894840, at *5 (discussing the importance of the SPD and citing 29 U.S.C. § 1022, and § 1024(b)). The Plan's SPD is made up of the Certificate of Insurance and the Supplemental Information. SMF ¶ 3; LTD Plan 034 ("The Certificate, along with the following Supplemental

14

Information, makes up the Summary Plan Description"); *see also* SMF ¶¶ 1-2; *Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 930 n.3 (11th Cir. 2021) (recognizing the policy wrap and the SPD as the applicable plan documents). The SPD states that LINA is the claim administrator for the Plan and is responsible for:

> adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims. [LINA] shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company shall be final and binding on Participants and Beneficiaries to the full extent permitted by law.

SMF ¶ 4; LTD Plan 035.

The Supplemental Information in the SPD also states that "benefits [are] provided in accordance with the provisions of the group insurance contract, LK-980281, issued by [LINA]". SMF ¶ 3. The Policy incorporates Brown & Brown's application, which includes an Appointment of Claim Fiduciary ("ACF"), therein appointing LINA as the Claim Fiduciary and providing:

> … Claim Fiduciary shall be responsible for adjudicating claims for benefits under the Plan, and for deciding any appeals of adverse determinations. Claim Fiduciary shall have the authority, in its discretion, to interpret the terms of the Plan, including the Policies, to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact. All decisions made by such Claim Fiduciary shall be final and binding on Participants and Beneficiaries of the Plan to the full extent permitted by law.

SMF ¶ 5.

In addition, the Policy states:

The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. The Employee must satisfy the Elimination Period, be under the Appropriate Care of a Physician, and meet all the other terms and conditions of the Policy. He or she must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid. The Disability Benefit is shown in the Schedule of Benefits.

> The Insurance Company will require continued proof of the Employee's Disability for benefits to continue.

Several courts have held that such a satisfactory proof provision is sufficient in itself to convey discretionary authority to the insurer/claim administrator. *See, e.g.*, *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1233–34 (11th Cir. 2006); *Luton v. Prudential Ins. Co. of Am.*, 88 F.Supp.2d 1364, 1370 (S.D. Fla. 2000); *Ponce*, 2012 WL 4481827, at *5.

Given the grants of discretion conveyed in the SPD, the ACF (incorporated into the Policy), and the Policy itself, there can be no dispute that LINA is vested with discretionary authority to make claim benefit decisions under the Plan.

**D.     Steps 3 and 4 – Reasonable Grounds Support LINA's Decision**

As LINA is vested with discretionary authority, even if this Court initially finds that LINA's decision was *de novo* wrong, "the ultimate question here is whether reasonable grounds supported LINA's ultimate decision; or, differently worded, whether LINA's final denial of LTD benefits was arbitrary and capricious." *Ponce*, 2012 WL 4481827, at *5 (internal quotation marks omitted) (citing *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010)). Notably, it is not the claim administrator's burden to prove its decision was *not* arbitrary, but rather, it is always the claimant's burden to submit proof sufficient to show entitlement to benefits and also to show that the denial decision was arbitrary. *Blankenship*, 644 F.3d at 1355; *Turner*, 2011 WL 1542078, at *5 (citing *Capone*, 592 F.3d at 1195).

Reasonable grounds support LINA's denial decision because Plaintiff failed to submit any records of psychological treatment and Dr. Lopez's records were insufficient to demonstrate a disabling condition. Although Dr. Lopez opined in his office note summaries that Plaintiff "is still not currently fit to work due to severe anxiety and depression," (*see* AR 414, 428), the board certified psychiatrists explained that there was a complete lack of objective findings or

aggressive treatment procedures to support such an opinion. *See* SMF ¶¶ 25, 34. LINA explained in its LTD denial letter to Plaintiff that there was a lack of treatment records to support a disabling mental condition. *See* SMF ¶ 27. LINA also asked Plaintiff to submit any additional records available during the appeal, and provided her with the three specialists' reports therein inviting her to submit a response. SMF ¶¶ 29-30, 37-38. Plaintiff did not provide any additional records and did not even have Dr. Lopez respond to the specialists' reports. *Id.*

All five of the board certified specialist reviewers concluded that the medical records did not demonstrate a disabling condition. Of special significance were the opinions of the two psychiatrists, Dr. Predanic and Dr. Richardson. As discussed above, both Dr. Predanic and Dr. Richardson explained why and how Dr. Lopez's records failed to demonstrate the existence of a disabling mental condition.

Under these circumstances, courts have routinely held that it is fully appropriate for a claims administrator to credit the reviewing specialists over the treating physician. *See, e.g., Blankenship*, 644 F.3d 1350 at 1356 ("administrators need not accord extra respect to the opinions of a claimant's treating physicians") (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965, 1970 (2003), also citing *Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1279–80 (11th Cir.2005)); *Gipson v. Admin. Comm. of Delta Air Lines, Inc.*, 350 F.App'x 389, 395 (11th Cir.2009) (citing, *Nord*, 538 U.S. at 834) ("A plan administrator has no obligation to give a treating physician's opinion more weight."); *Watts v. BellSouth Telecomms., Inc.*, 218 F. App'x 854, 856 (11th Cir. Feb. 22, 2007); *Meadows*, 2011 WL 1102774, at *13-14 & n.15 (citing *Nord*, 538 U.S. at 831 and stating "the Supreme Court clarified that in the area of ERISA, opinions of treating physicians are not entitled to any greater deference than those of reviewing

physicians") (additional citations omitted); *Herring v. Aetna Life Ins. Co.*, 898 F.Supp.2d 1313, 1316 (S.D. Fla. 2012); *Crume*, 417 F.supp.2d at 1276 & n.16.

Here, LINA's decision was well-supported by the opinions of the physician reviewers. LINA's decision was also supported by Dr. Lopez's treatment records which indicated normal mental status exams (MSEs) and stated that Plaintiff's depression and mood were improving with treatment. Finally, the lack of any psychological or mental health therapy records and lack of any new treatment records from mid-September 2019 to March 5, 2020 further support that LINA's denial of LTD benefits was reasonable.

**E.      Steps 5 and 6 – LINA's Decision was Not Caused by a Conflict of Interest**

A conflict of interest may exist where the administrator determines eligibility for benefits and also pays claims out of its own assets. *German v. Metro. Life Ins. Co.*, 2016 WL 5661628, *5 (S.D. Fla. Sept. 30, 2016). As LINA both insures the payment and makes the determination for eligibility for benefits, there is deemed to be at least a structural conflict of interest. However, "[t]he presence of a structural conflict of interest – an unremarkable fact in today's marketplace – constitutes no license, in itself, for a court to enforce its own preferred *de novo* ruling about a benefits decision." *Blankenship*, 644 F.3d at 1356. The analysis should remain centered on whether a reasonable basis existed for LINA's decision. *Id.* at 1355. As set forth above, LINA provided specific, detailed reasons supporting its denial of Plaintiff's request for LTD benefits.

Moreover, "[t]he burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Blankenship*, 644 F.3d at 1357. As described herein, it was the lack of supporting medical and mental

treatment records, not any conflict of interest, that dictated the denial of Plaintiff's claim for LTD benefits.

### III. CONCLUSION

WHEREFORE, for all the reasons set forth herein, LINA respectfully requests that this Court grant summary judgment in their favor and award LINA its attorney's fees and costs incurred in the defense of this ERISA action.

Dated: June 14, 2021                                          Respectfully submitted,

        s/ Shari Gerson
        SHARI GERSON
        Florida Bar No.  17035
        GRAYROBINSON, P.A.
        Email:  Shari.Gerson@gray-robinson.com
        401 East Las Olas Boulevard, Suite 1000
        Fort Lauderdale, Florida  33301
        Telephone:  954-761-8111
        Facsimile:  954-761-8112

        and

        Kelly J.H. Garcia
        Florida Bar No. 0694851
        Email: kelly.garcia@gray-robinson.com
        GRAYROBINSON, P.A.
        301 E. Pine Street, Suite 1400
        Orlando, FL  32802-3068
        Telephone: 407-843-8880
        Facsimile: 407-244-5690

        *Counsel for Defendant*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of June, 2021 I have electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that the foregoing document is being served on the following Plaintiffs' counsel via transmission of Notices of Electronic Filing generated by CM/ECF: Maria T. Santi, Your Insurance Attorney,

PLLC, Health and Medicine Law Firm Division, 2601 S. Bayshore Drive, 18th Floor, Miami, FL 33133, Tel: 305-444-5969, email: msanti@yourinsuranceattorney.com, or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ *Shari Gerson*        __
Shari Gerson, Esq.,
Florida Bar No. 017035
