UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-CV-25259-CMA

EUNICE LOPEZ,

        Plaintiff,

vs.

LIFE INSURANCE COMPANY OF NORTH AMERICA
d/b/a CIGNA,

        Defendant.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Plaintiff, EUNICE LOPEZ (hereinafter "Plan Beneficiary"), through her undersigned counsel, and pursuant to Local Rule 7.1 and 56.1 files her Response in Opposition to Life Insurance Company of North America's (hereinafter "the Insurance Company") Motion for Summary Judgment, and states as follows:

### Preliminary Statement

Ms. Lopez was a loyal and dedicated employee of Brown and Brown, Inc. ("the Employer") since approximately August 4, 2015, until approximately December 12, 2019. AR. 457. Statement of Material Facts ("SMR1") ¶1. The Employer is the Plan Sponsor. During her employment she paid for disability insurance through the Insurance Company to ensure that she and her family would be protected and cared for in the event of any illness. However, when the unthinkable happened and she was indeed unable to return to work due to a debilitating mental health condition, the Plan Administrator at issue took substantive and procedural steps to block all access to long-term disability coverage and make payment for her claim. SMR1 ¶20. The denial of benefits only caused more turmoil in her life and left her and her family in a financial



struggle that only added to her mental health issues. SMR1 ¶61. The opposition by the Insurance Company debilitated her emotional well-being and impacted her livelihood and continues to impact her livelihood. SMR1 ¶61. As of the date of filing this response, the Plan Beneficiary has been unable to return to work and continues to suffer without any further opportunity to present proof of her continuing disability. The Insurance Company took six months to make a claim determination. AR456-457; AR564-573. They denied the claim via letter dated November 14, 2019 and **determined that she was not functionally limited due to psychiatric or functional impairment.** AR 521-525. No treating providers made this determination, and the policy does *not* use that definition to determine if a disability is present. The decision was affirmed on February 6, 2020. AR 570-572.

## Summary of the Argument

The Defendant's Motion for Summary Judgment should not be granted because it does not meet the Summary Judgment Standard required under Federal Rule of Civil Procedure 56 or ERISA case law. The Insurance Company must interpret and apply the terms of the Plan Document under a "higher than marketplace" standard. *Metropolitan Life Ins. v. Glenn*, 554 U.S. 105, 118 (2008). ERISA dictates that the Insurance Company discharge its duties with "care, skill, prudence, and diligence." 29 U.S.C. § 1104(a)(1)(B). As a fiduciary, the Insurance Company must act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1)(A); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Insurance Company must engage in a "deliberate, principled reasoning process." *See Glenn*, 554 U.S. at 128. Under this process the Insurance Company is required to consider all evidence and answer the question of whether the evidence supports the disability definition

under the terms of the Plan. Here, the Insurance Company has failed to discharge its duties as required solely in the interest of the Plan Beneficiary, Ms. Lopez.

The Defendant has cherry picked the facts in the administrative record that are beneficial to it, has failed to provide a complete picture of the Beneficiary's actual health condition, and has failed to provide a thorough explanation for the basis of its denial under the terms of the Plan. When a plan administrator picks only favorable evidence to rely upon for its decision, it acts arbitrarily and capriciously. *Kaviani v. Reliance Standard Life Ins. Co*., 799 Fed. App'x 753 (11th Cir. 2020).

## Procedural Posture

Plaintiff filed a Complaint on or about December 28, 2020 against Life Insurance Company of North America d/b/a Cigna. *See* ECF No. 1.  Defendant filed its Answer and Affirmative Defenses on or about January 25, 2021. *See* ECF No. 6. The Parties attended mediation on March 19, 2021 and were unable to reach an agreement. *See* ECF No. 15. On June 14, 2021, Defendant filed its Motion for Summary Judgment ("MSJ"). *See* ECF No. 18. Defendant filed its Statement of Material Facts on June 14, 2021, contemporaneously with its MSJ as required by Local Rule 56.1. *See* ECF No. 19. Plaintiff sought an extension of time to respond to Defendant's MSJ and an Order granting an extension to respond by July 12, 2021 was entered. *See* ECF No. 21.

## Standard of Review

I.   **Motion for Summary Judgment Standard**

A motion for summary judgment is appropriate under Fed. R. Civ. P. 56(c), where the undisputed facts show that "there is no genuine issue as to any material fact and that [Plaintiff] is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477

U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). In an ERISA benefits dispute, however, "the 'standard' summary judgment considerations do not apply." *See Hert v. Prudential Ins. Co. of Am.*, 650 F. Supp. 2d 1180, 1190 (M.D. Fla. 2009). Instead, here, summary judgment is merely the conduit to bring the legal question before the district court. *See Crume v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 1258, 1272 (M.D. Fla. 2006).

## II.    ERISA Standard of Review

Generally, "a denial of benefits challenged under § 502(a) (1) (B) of ERISA is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone & Tire Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57, 103 L. Ed. 2d 80 (1989) (emphasis added). If discretion is given in the Plan to either determine eligibility or construe its terms, the standard of review is under an "abuse of discretion." *Id*. To determine whether the ERISA plan grants to the administrator discretionary authority, the court looks to the relevant group policy and the summary plan description, "which together make up the ERISA plan, for purposes of 29 U.S.C. § 1102(a)(1)." *Shaw v. Conn. Gen. Life Ins. Co*. 353 F.3d 1276 (11th Cir. 2003). ERISA does not promulgate standards under which district courts must review denied benefits. *Bruch*, 489 U.S. at 109. To fill this void, the Supreme Court articulated a framework for judicial review, which the Eleventh Circuit developed into a six-part test. *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 672 (11th Cir. 2014).

>       (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong"[1] (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision;

---

[1] 'Wrong' is the label used to describe the conclusion a court reaches when, after reviewing the plan documents and disputed terms *de novo*, the court disagrees with the claims administrator's plan interpretation. *Tippitt v. Reliance Standard Life Ins. Co*., 457 F.3d 1227 (11th Cir. 2006).

Page 5 of 22

(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end the inquiry and reverse the decision;

(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard);

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest;

(5) If there is no conflict, then end the inquiry and affirm the decision;

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011); *See also O.D. v. Jones Lang Lasalle Medical PPO Plus Plan*, 772 Fed. Appx. 800, 803-804 (11th Cir. 2019).

A conflict of interest may exist where the administrator determines eligibility for benefits and also pays claims out of its own assets. *German v. Metro. Life Ins. Co.*, 2016 WL 5661628, *5 (S.D. Fla. Sept. 30, 2016). The conflict of interest is one of many factors to take into account when determining whether the denial of benefits was reasonable at step three. *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195-1196 (11th Cir. 2010).

## Brief Statement of Undisputed Facts

Plaintiff, seeks long-term disability ("LTD") benefits under the Plan. The Plan is governed by ERISA as it is a welfare benefits plan. SMR1 ¶¶3,4. The Plan was issued by the Insurance Company, Life Insurance Company of North America d/b/a Cigna, to Brown & Brown Inc. Defenant is the Claims Administrator and Fiduciary. SMR¶¶4,5. On or about May 15, 2019, the Plan Beneficiary stopped working due to anxiety and depression. *See* ¶16, Comp. SMR ¶6,

SMR1 ¶5. At the time of the illness she was under the care of Dr. Javier Lopez, Neurologist. AR062-064; AR500. The Plan Beneficiary suffers from migraines however, Dr. Lopez, the Plan Beneficiary's treating neurologist, indicated that it was her emotional state and depression as the reason why she was unable to continue working. AR203. The Insurance Company granted the Plan Beneficiary short term disability benefits from May 29, 2019 through August 12, 2019. SMR ¶9, SMR1¶8. The gross monthly benefit amount is $1,783.00. AR 613.

On or about August 12, 2019, the Plan Beneficiary remained unable to work and sought long term disability benefits. AR501-502. The Plan Beneficiary also was scheduled to see Dr. Javier Lopez in October 2019 to continue her treatment. AR558-561. AR550-552. As part of the treatment provided by Dr. Lopez, the Plan Beneficiary was prescribed medication to address her migraines and her depression, as noted by the antidepressant medication prescribed to her. AR 206-208; AR134-136; AR 199-201; AR 412-414; AR 426-428.

The first denial of long term disability benefits was sent to the Plan Beneficiary in a letter dated November 14, 2019. AR 521-525, 536. This letter included the definition of "disability" as it was written within the policy language. In this same denial letter, the Insurance Company acknowledged that they did not continue outreach to the Plan Beneficiary's treating physical, even though a visit was scheduled for October 11, 2019. *Id*. The Plan Beneficiary then sought an appeal of the denial of long term disability benefits provided by a letter dated November 14, 2019. SMR ¶28. The Insurance Company rendered a final decision and upheld their own denial of benefits for long term disability benefits. SMR1 ¶¶19, 20. This is evidenced by a letter dated February 6, 2020. *Id*. As noted in this denial letter, no new additional information was reviewed prior to rendering a second denial of benefits provided under the Plan. *Id*. Subsequently, the Plan

Beneficiary sought legal counsel and filed suit in December 2020. The Insurance Company filed

a Motion for Summary Judgment on June 14, 2021.

## Brief Statement of Disputed Facts

At the time of the illness Plaintiff was under the care of Dr. Javier Lopez, Neurologist,

and Dr. Michelle Gonzalez, psychologist. AR062-064. Plaintiff provided this information to the

Insurance Company. *Id*. The record does not show anywhere that the Insurance Company called

Dr. Michelle Gonzalez at anytime to request information. Dr. Lopez, assessed the Plan

Beneficiary and determined she would be unable to work until at least January 6, 2020. SMR1

¶¶60, 61. The anxiety and depression caused the Plan Beneficiary to exhibit physical symptoms

that inhibited her ability to work. SMR1 ¶¶60, 61. In a letter from Brown & Brown Inc., dated

December 12, 2019, the Plan Beneficiary was terminated from her employment due to her

inability to resume work and the personal leave of absence taken in order to continue treatment

from her illness. The Plan Beneficiary was notified by letter dated January 10, 2020 that the

Insurance Company needed an extension of time due to the appeal being under review. AR546.

As noted by the Insurance Company, on the date of that letter, the Insurance Company had not

attempted to speak to Dr. Lopez regarding any further questions of his reports or to conduct a

peer-to-peer discussion regarding the Plan Beneficiary. AR546. The doctors employed by the

Insurance Company only attempted to speak to Dr. Lopez regarding any outstanding questions

for the treatment of the Plan Beneficiary via phone twice and sent questions via fax once. SMR1,

¶39,50. No other attempts were made to speak to Dr. Lopez in order to conduct a peer-to-peer

discussion with the Plan Beneficiary's treating physician as it relates to the treatment and

continued visits by the Plan Beneficiary regarding her mental and physical well being. *Id*.

Plaintiff was disabled due to severe anxiety and depression. SMR1, ¶¶60, 61.

<u>**Argument and Memorandum of Law**</u>

**I.    The Insurance Company's Denial of LTD Benefits was Wrong and Unreasonable**

ERISA does not provide any standard for reviewing the decisions of plan administrators or fiduciaries. *See Meadows v. Am. Airlines, Inc.*, 2011 WL 1102774 (S.D. Fla. Mar. 24, 2011). However, in *Firestone*, the Supreme Court established three different standards for reviewing an ERISA plan administrators decision: 1) de novo review where the plan does not grant the administrator discretion, 2) arbitrary and capricious where the plan grants the administrator discretion, and 3) heightened arbitrary and capricious where the plan grants the administrator discretion and the administrator has a conflict of interest. *Bruch*, 489 U.S. at 115; *See also Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189 (11th Cir. 2010). Here, the Insurance Company did not adhere to ERISA standards because it failed to make a reasonable determination based on a diligent and adequate investigation as required under its fiduciary duties. *Aetna Life Ins. Co.*, 592 F.3d at 1200. The Insurance Company failed to evaluate the Beneficiary's claim impartially and reasonably because (i) it failed to consider all evidence and cherry picked the facts in the administrative record that are beneficial to it and failed to provide a complete picture of the Beneficiary's actual health condition (ii) and adopted opinions of its reviewing physicians when the opinions were not congruent with the terms of the Plan.

**A. The Insurance Company Failed to Consider All Evidence and Cherry-Picked Facts in the Administrative Record Beneficial to It**

In its Motion for Summary Judgment, the Insurance Company continually states that the Beneficiary was not functionally limited. It also makes reference to varying symptoms of improvement without any further analysis or determination as to the level of improvement. It also seems to emphasize that the Plaintiff's symptoms were not severe enough. However, nowhere in the Plan does a disability have to be "severe" to warrant benefits.

Under ERISA, a fiduciary has the "responsibility to fully investigate" claims before denying benefits. *Capone*, 592 F.3d 1189, 1200 (11th Cir. 2010); *See also Prelutsky v. Greater Georgia Life Ins. Co.*, 2017 WL 2406730, at *5 (11th Cir. 2017) (discussing *Capone* and noting that Aetna's investigation was deemed unreasonable because **it made no attempt to interview witnesses who may have had information contradictory to the company's theory of the facts**)(emphasis added). The *Capone* Court explained that 29 U.S.C. § 1104(a)(1) mandates that a fiduciary shall "discharge his duties with respect to a plan **solely in the interest of the participants and beneficiaries** and...with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use..." *Id.* at 1199-1200(emphasis added). As a result, Aetna, as a fiduciary, had the responsibility to fully investigate *Capone*'s claims before denying benefits. *Id.* at 1200. An ERISA fiduciary is required to make

> "an honest effort to ascertain the facts upon which its exercise must rest and an honest determination from such ascertained facts. . . If [the fiduciary] knew of matters concerning which honestly would require investigation, and failed to act, or if it knew of matters which would honestly compel a given determination and it announced to the contrary, it cannot, in law be regarded as having exercised good faith, and its action would be arbitrary. Thus, an improper motive sufficient to set aside a fiduciary's decision may be inferred from the fiduciary's failure to investigate or to interpret honestly evidence that greatly preponderates in one direction."

*Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1566 n.11 (11th Cir. 1990). *See also, Brock v. Walton*, 794 F.2d 586 (11th Cir. 1986) (A fiduciary's duty to investigate is a key facet of prudence and is often at the heart of fiduciary litigation); See also *Glenn*, 554 U.S. at 115  (to accurately process claims plan fiduciaries must provide a "full and fair review" of all denied claims); *See also Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807 (10th Cir. 2004)

(ERISA fiduciaries "cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement").

Here, the Insurance Company blatantly ignored the Plaintiff's condition and failed to address the initial basis (i.e. mental illness, AR. 230) for her claim to make the adverse LTD claim determination. All the medical records submitted by the Plaintiff indicate the worsening of her condition and no significant progress. SMR1, ¶¶60, 61. The Insurance Company uses only certain statements to support their position. This is arbitrary and capricious. *Reliance Standard Life Ins. Co.*, 799 Fed. App'x 753. In addition, in her initial claim reporting paperwork, the Plaintiff provided the names of treating physicians for her conditions along with contact information for each one. A Michelle Gonales, Phone 305-445-0477 is listed along with Javier Lopez Phone 305-665-6501. AR 062-064. Nowhere in the record does it state that the Insurance Company ever made an effort to investigate or obtain information from Michelle Gonales, Phone 305-445-0477.[2] In *Capone*, the court found fault with the insurance company's failure to interview witnesses who had direct knowledge of facts relevant to the case before denying the plaintiff's claim for benefits. *Capone*, 592 F.3d 1189, 1200. Here, the Insurance Company made the same mistake. It never contacted Michelle Gonales, Phone 305-445-0477 for more information and also failed to conduct a peer to peer review with Dr. Lopez. SMR1, ¶39,50.

### 1.  Worsening Symptoms Ignored

A review of the medical records indicates that the Plan Beneficiary was unable to work until at least January 6, 2020 due to severe anxiety and depression. SMR1, ¶¶60, 61. The Insurance Company indicates that they are not obligated to defer to the Plan Beneficiary's treating physician in coming to a decision. However, in light of the intricacies of mental illness and its

---

[2] A simple google search of the phone number 305-445-0477 indicates that this is the office of psychologist, Coral Gables Counseling. This information was available to the Insurance Company during the time the claim was reviewed.

implications on the physical well being of the Plan Beneficiary in this case, the Insurance Company should have continued to attempt contact with the treating physician since he had been treating the Plan Beneficiary for months. The Insurance Company showed that it attempted to contact the treating physician, Dr. Lopez, in as much, demonstrating that there was additional information necessary and questions to be asked. SMR1, ¶39,50. Its failure to follow up and get answers to these questions should render the denial as not fully informed and unreasonable. SMR1, ¶39,50. Here, the Insurance Company was unreasonably by just relying on their own employed doctors, who ultimately would make a decision most favorable to the insurance company who employs them. The Insurance Company took no further action and denied benefits anyway. To do so was unreasonable. SMR1, ¶39,50.

The Insurance Company indicates that the Plan Beneficiary no longer suffered from disabling migraines because she was medicated, as prescribed by Dr. Lopez. The Insurance Company simply notes that Dr. Lopez's notes reflect that due to the medication, the Plan Beneficiary was doing substantially and generally better. Again demonstrating arbitrary and capricious behavior by cherry picking statements to favor their decision. However, what the Insurance Company failed to consider is that the primary diagnosis for the Plaintiff's inability to work was **severe anxiety and depression**. SMR1, ¶¶60, 61. Dr. Lopez stated that "Patient cannot work under stress due to her emotional state because patient is currently undergoing treatment for depression." AR203. However, in order to downplay the severity of Plaintiff's condition, the Insurance company 'cherry picks' the language from this BHQ and states that the reason for works restrictions was "due to her emotional state." SMR¶17. Thereafter, the Insurance Company's mere recital that the Plan Beneficiary was showing improvement after a month or more of being prescribed medication does not take into consideration the consistent

documented evidence and meidcal notes by Dr. Lopez that Plaintiff was severely depressed. SMR1, ¶¶60, 61.

The Insurance Company also indicates that, under the policy, the Plan Beneficiary must be receiving appropriate care in order to qualify for long term disability benefits, and they indicate that Dr. Lopez is not a psychiatrist or psychologist. Dr. Javier Lopez is a neurologist who was addressing the physical ramifications of mental illness as they portray themselves in physical form. Therefore, Dr. Lopez is the appropriate physician to address those ramifications and provide prescriptions to ameliorate the physical symptoms of a mental illness. AR 203; AR 118-121; AR 194; AR 196-198; AR 212-214, 216, 217; AR 186-187. AR 206-208; AR134-136; AR 199-201; AR 412-414; AR 426-428.

**2. Doctors Hired by the Insurance Company Used the Severity of Plaintiff's Condition as a Basis to Make an Adverese Benefit Determination when Such Opinion is not in Congruence with the Terms of the Plan**

It is to be noted that the Insurance Company employed a doctor that stated that the medical information for the Plan Beneficiary did "not support psychiatric functional limitations, and explained that while Plaintiff reported ongoing symptoms, her mental status exam findings were within normal limits, her neurological exam indicated no cognitive impairments, and the 'documentation provided for review lacks objective evidence to support these symptons are a level of severity that would limit functioning, such as active suicidality or homicidally, suicide attempts, psychosis, or psychiatric hospitalizations'." AR434. AR 453-454. AR 558-561. This statement by the doctor employed by the Insurance Company seems to suggest that disability, as it relates to mental illness and its physical implications, would only be a deciding factor if a patient is so impaired that they have attempted suicide or been psychiatrically hospitalized either on their own volition or by the determination of another to Baker Act the Plan Beneficiary, or

any patient. *Id*. The terms of the Plan do not require a certain level of severity of illness to pay for disability benefits to make a determination of benefits. *See* Pg. 27, ECF No. 1-3. *See* Pg. 18, ECF No. 1-3. The definition of Disability, likewise, does not require a certain level of severity. *See* Pg. 3, ECF No. 1-3. *See* Pg. 18, ECF No. 1-3.  The Insurance Company made an unreasonable determination in relying on the severity of Plaintiff's illness as a factor because the terms of the Plan do not require such an interpretation. The Insurance Company simply regurgitated the opinion of Dr. Richardson and failed to properly interpret its plan provisions in violation of ERISA. AR564-AR569.

**B.  The Insurance Company Adopted Opinions of its Reviewing physicians when the Opinions were not Congruent with the Terms of the Plan**

As the plan administrator and fiduciary, the Insurance Company was the only actor who could determine whether the Plaintiff met the definition of Disability under the terms of the Plan.

The Plan defines Disability as follows:

**"Definition of Disability/Disabled**
**The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is either:**

1.   **Unable to perform any or all of the material and substantial duties of any occupation for which she is or may reasonable become qualified based on education, training and experience; or**
2.   **Unable to earn 80% more of his or her indexed earnings.**

*See* ECF No. 1-3, pg. 11 of 102.

The Insurance Company employed two reviewing physicians to make its *initial* adverse benefit determination, Dr. Aneta Predanic, a Psychiatrist (AR435-437) and Dr. Nizar Souayah, a Neurologist[3] (AR445-449). These two doctors did not interpret the plan, instead they answered two questions to determine whether the Plaintiff was functionally limited:

---

[3]Of significant note is the fact that Dr. Souayah did not make any assessment whatsoever related the basis of Plaintiff's Long-Term Disability Claim which is limited to a Mental Health Illness, not migraines. Dr. Predanic

(i)     "Is Ms. Lopez functionally limited? If so, describe how Ms. Lopez is functionally limited?" and

(ii)    Considering Ms. Lopez's functional limitations and the treatment(s) required for their condition(s), what medically necessary activity restrictions are appropriate?"

Similarly, the three reviewing physicians employed by the Insurance Company, after the Beneficiary submitted her appeal, echo defects and conclusory opinions without any language that is in congruence with the terms of the Plan. These three doctors – Dr. Elbert Richardson (AR 558-561); Dr. David Burke (AR 550-552), Dr. Roger Belcourt (AR 554-556)  did not interpret the plan, instead they answered two questions to determine whether the Plaintiff was functionally limited:

(i)     "Is Ms. Lopez functionally limited and to what degree?" and

(ii)    "Does Ms. Lopez require medically necessary work activity restrictions and if so describe the restrictions?"

The doctors tried to answer the question of whether the Plaintiff was "functionally limited" what she is physically capable of doing, however, they failed to conclude whether or not she was unable to perform any or all of the material and substantial duties of any occupation for which she may be qualified, instead making conclusory determinations not based on the terms of the Plan. Each of the physicians also state "The treating provider's opinion is not well supported by medically acceptable clinical diagnostic techniques including mental status examinations, psychological and/or neuropsychological testing and is inconsistent with the other substantial evidence in the claim file." They fail to provide *any detail* as to the governing "medically acceptable clinical diagnostic techniques including mental status examinations, psychological and/or neuropsychological testing." This is unreasonable as the Plan Beneficiary was not apprised what information she had to refute.

---

stated that she did not include consideration of mental health conditions in her analysis. AR 448. Thus, her opinion should be given no weight.

The Insurance Company, as a fiduciary, was responsible for taking this information, and processing it to apply the terms of the Plan to make a final determination as to whether the Plaintiff was able to perform the substantial and material duties of her occupation. Here, the Insurance Company acted unreasonably when it accepted and simply restated the opinions of the pre appeal and post appeal employed doctors without asking itself whether those opinions were congruent with the terms of the Plan. So, when all doctors stated that there were no functional limitations, the Insurance Company needed to ask whether the assessments meant under the terms of Plan that Plaintiff was "**[u]nable to perform any or all of the material and substantial duties of any occupation for which she is or may reasonable become qualified based on education, training and experience."** *See* ECF No. 1-3, pg. 11 of 102. There was no evidence to determine whether the Plaintiff could perform material and substantial duties of any occupation as stated under the terms of the Plan. In fact, Dr. Predanic simply stated "[n]o restrictions are medically necessary due to psychiatric condition" not even noting if it was related to work. AR 437. The Insurance Company simply cited all of the hired doctors' specific arguments as justification for denying the Plaintiff's benefits, when the Plan does not contain provisions that support them. AR435-437; AR445-449; AR 558-561; AR 550-552; AR 554-556. The Insurance Company failed to credit the Plaintiff's reliable evidence of disability and mental illness as described in her medical records and questionnaires. AR 203; AR 118-121; AR 194; AR 196-198; AR 212-214, 216, 217; AR 186-187. AR 206-208; AR134-136; AR 199-201; AR 412-414; AR 426-428. Plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 1972, 155 L.Ed.2d 1034 (2003). Here, the Plan beneficiary submitted all the evidence available to her, including contact infromation to her

psychologist. The Insurance Company, as the Plan Administrator, was obligated to consider all evidence and apply that evidence in accordance with the terms of the Plan. However, it did not do so and instead copied and pasted the opinions of the doctors it hired without making a proper determination in accordance with the Plan's defintion of disability. Based on the foregoing, the decision to deny long term disability benefits to the Plan Beneficiary was wrong and unreasonable and should be overturned as this decision was arbitrary and capricious.

## II. The Insurance Company had Discretionary Authority to Make Claims Decisions

The next step in the ERISA analysis, if the Court determines that the Insurance Company made a 'wrong' decision is to determine if the Insurance Company had discretionary authority. *Metro. Life Ins. Co.*, 644 F.3d at 1355. The Insurance Company, in its motion for summary judgment, also state that the Insurance Company was vested with the discretion to make a policy coverage decision. This discretion is provided in the language of the policy, the Plan's summary plan description, and the Plan's appointment of claim fiduciary provide this vested discretion. Therefore, it is undisputed that the Insurance Company was vested with the discretion to review claims. *See* Compl., ¶¶8, 10, 15. SMR1, ¶3. As a result, the next step is to determine is the Insurance Company's decision was reasonable. *Metro. Life Ins. Co.*, 644 F.3d at 1355.

## III. The Insurance Company's Decision Was not Based on Reasonable Grounds

District courts sit more as appellate tribunals than a trial court. *See Curran v Kemper Nat. Servs., Inc.*, 133 F. App'x 740 (11th Circ. 2005). Therefore, the court reviews administrative decisions to terminate the benefits in light of the evidence before it at the time of the decision. *Id.* The standard to which a review of a decision is made, is an abuse of discretion when "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *See Firestone Tire & Rubber Co. v. Bruch*, 489

U.S. 101, 115 (1989). In *Holland*, the court allowed the reviewing court to decide on a case-by-case basis whether under the particular facts whether the plan administrator abused its discretion by not obtaining the opinion of the vocational rehabilitation expert. *See Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 250 (5th Cir. 2009) (citing *Duhon v. Texaco, Inc.*, 15 F.3d 1302 (5th Cir. 1994). A decision must be supported by substantial evidence in order to be sustained. *See Buzzard v. Hollans*, 367 F.3d 263 (4th Cir. 2004). Substantial evidence has been noted to be evidence that a reasonable mind might accept as adequate to support the determination made, and it requires more than a scintilla but less than a preponderance of the evidence. *See Celardo v. Gny Auto. Dealers Health and Welfare Trust*, 318 F.3d 142 (2d Cir. 2003) (citing *Miller v. United Welfare Fund*, 72 F.3d 1066 (2d Cir. 1995). If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then it is necessary to determine whether "reasonable" grounds supported it under a deferential arbitrary and capricious standard. *Metro. Life Ins. Co.*, 644 F.3d at 1355.

Here, the Insurance Company abused its discretion because it failed to consider the Plaitnif's medical records and documentary evidence. It also failed to hire an expert to determine if Plaintiff could perform substantial and material duties as per the Plans terms. As noted above, the Insurance Company took opinions of the physicians it hired and simply repeated the statements in its denial letters. The Insurance Company was not reasonable because it failed to properly interpret the terms of the Plan in violation of ERISA. In addition, they failed to interview key witnesses, Dr. Lopez and Plaintiff's treating psychologist. Under ERISA, a fiduciary has the "responsibility to fully investigate" claims before denying benefits. *Capone*, 592 F.3d at 1200. The Insurance Company failed to provide a full and fair review of Plaintiff's claims and blatantly ignored Plaintiff's medical records and instead, relied on the opinions of

hired physicians without making a proper determiation pursuant to the terms of the Plan. Because there are no reasonable grounds to deny the Plaintiff's Long Term Disability claim under this scenario, the Court should end the inquiry and reverse the Insurance Company's decision. *Metro. Life Ins. Co.*, 644 F.3d at 1355. If the Court decides to move to the next step, this Honorable Court should find that there was a conflict of interest and consider it as a factor to detrmine whether the Insurance Company's decision was arbitrary and capricious.

## IV.  The Insurance Company Operated Under a Conflict of Interest

In this particular case, there is a conflict of interest, so the third, heightened arbitrary and capricious standard of review will apply. As acknowledged by the Insurance Company in its MSJ and per established precedent, a conflict of interest may exist where the administrator determines eligibility for benefits and also pays claims out of its own assets. *German v. Metro. Life Ins. Co.*, 2016 WL 5661628 (S.D. Fla. Sept. 30, 2016). In the Insurance Company's motion for summary judgment, they acknowledge that there is a conflict of interest because it both insures the payment and makes the determination of eligibility of benefits under the policy. Therefore, the court must turn to the next step and consider whether the Insurance Company's conflict lead to an arbitrary and capricious decision.

Conflict of interest is one of the factors considered for the denial of benefits provided by the Plan which led to the arbitrary and capricious decision. The 11th Circuit has determined that the court should review whether or not a conflict of interest tainted the administrstors benefit decision on a case by case basis under an abuse of discretion standard. *See Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350 (11th Cir. 2011). In order to determine whether or not a plan administrator has abused its discretion, a court may consider: a) the scope of the discretion conferred; b) the purpose of the plan provision in which the discretion is granted; c) any external

standard relevant to the exercise of that discretion; d) the administrators motives; e) any conflict of interest under which the administrator operates in making its decision. *See Haley v Paul Revere Life Ins. Co.*, 77 F.3d 84, 89 (4th Cir. 1996).

In analyzing any conflict of interest,  the Supreme Court has recognized that where a plan fiduciary exercising its discretion operates under a conflict of interest, the conflict is an important factor in determining whether the discretion has been abused. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). While there is no one size fits all approach to a conflict analysis, the courts consider the "significance of this factor will depend upon the circumstances of the particular case." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). It is abundantly clear that most courts have found that the insurance company acting as both as plan administrator and insurer is inherently self-interested. *Id. See also Lee v. Blue Cross/Blue Shield of Alabama*, 10 F.3d 1547 (11th Cir. 1994).

As noted previously and in the Insurance Company's motion for summary judgement, they acknowledge the conflict that exists in the present case. The plan administrator, in making a decision regarding benefits is also making a decision for the insurance company, who is both tasked with making payments for the benefits and determining whether or not an insured is covered by the policy. It is important to note the loss that the insurance Company would stand to lose if any long term disability benefit is deemed covered and paid out to the Plan beneficiary.

The Insurance Company is a profit driven company. It is tasked with making sure that as little loss is suffered in providing coverage to a wide variety of individuals, and taking into account the maximum exposure of its clients. As it pertains to this particular matter, the Insurance Company denied coverage for long term disability in order to protect their bottom line. While the Insurance Company states that the denial was based on assertions that the Plan

Beneficiaries mental illness and physical illness was not severe enough to result in long term disability, that contradicts the terms of the Plan document.

Therefore, the Insurance Company abused its discretion in disregarding the Plans' terms and documented medical evidence presented by the Plaintiff in a showing of complete self-interest. Under a conflict of interest, in denying the Plan Beneficiary's long term disability benefits the Insurace Company sought to protect themselves and ignored its fiduciary duties to pu the Plan Beneficiaries interests about its own. As noted by the Insurance Company, they did not wait to obtain additional information from the Plan Beneficiary's treating physician or psychologits. Instead, they relied on their own, hired physicians who are also being employed by the Insurance Company, in order to come to a decision. It is an abuse of discretion to know that additional information regarding a claim and illness of an insurer exists, and deciding to disregard that information for the purposes of expediency lending itself to an improper and biased claim review. The Plan Beneficiary's treating physician has additional information not mentioned in other reports such as initial observations, detailed observations, and other important factors that a physician may not need to add to a report in order to conclude that the Plan Beneficiary was unable to work. This information specifically from the treating physician would be essential. This would especially be important considering that the Plan Beneficiary was approved for for short term disability by the same Insurance Company who decided to deny long term disability benefits. In sum, the Insurance Company, acting under a conflict of interest, abused its discretion in denying the Plan Beneficiary's long term disability benefits.

## **CONCLUSION**

The Insurance Company failed to give the Plan Beneficiary a full and fair review of her claim file. It failed to properly execute its duties under ERISA and to act solely in the interest of

the Plan Beneficiary and to reasonably execute its duties. Instead, the Insurance Company put its own interests ahead of the Plan Beneficiary's interest to deny benefits and significantly curtailed her livelihood. The Insurance Company failed to give credit to the evidence provided by the Plan beneficiary and instead cherry-picked small segments or words to make it seem that she was improving, and no disability was apparent, when all the record evidence states the contrary. The Insurance Company ignored substantial evidence of disability, failed to properly investigate the claim and disregarded the terms of the Plan by failing to make a proper interpretation pursuant to the definition of disability under the Plan. The review is biased and the denial of long-term disability benefits should be overturned.  For the foregoing reasons, Plaintiff requests that this Honorable Court deny the Defendant's Motion for Summary Judgment, award the Plaintiff past due Long term disability benefits through the six month period allowed under the Policy and grant her attorneys fees and costs. The decision to deny the benefits to the Plan Beneficiary was not reasonable and therefore, a genuine issue of material fact exists, a conflict exists and additional information regarding this claim is to be found through the discovery process.

Dated this 12th day of July 2021.

Respectfully submitted,

**Your Insurance Attorney, PLLC**
Health and Medicine Law Firm Division
*Counsel for Plaintiff*
2601 S. Bayshore Drive,18th Floor
Miami, FL 33133
Ph: 305-444-5969
Service email:
health@yourinsuranceattorney.com
Attorney email:
msanti@yourinsuranceattorney.com
xb@yourinsuranceattorney.com

By:      **/s/ Maria T. Santi**
MARIA T. SANTI, ESQUIRE
Florida Bar No.:  117564

<u>**Service List**</u>

| | |
|---|---|
| Shari Gerson, Esq. | Kelly J.H. Garcia, Esq. |
| Florida Bar No. 17035 | Florida Bar No. 0694851 |
| Shari.gerson@gray-robinson.com | Kelly.garcia@gray-robinson.com |
| GRAYROBINSON, P.A. | GRAYROBINSON, P.A. |
| 401 East Last Olas Boulevard | 301 e. Pine Street |
| Suite 1000 | Suite 1400 |
| Fort Lauderdale, Florida 33301 | Orlando, Florida 32802 |
| Telephone: 954-761-8111 | Telephone: 407-843-8880 |
| Facsimile: 954-761-8112 | Facsimile: 407-244-5690 |
| *Counsel for Defendant Life Insurance Company of North America, d/b/a Cigna* | *Counsel for Defendant Life Insurance Company of North America, d/b/a Cigna* |