UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:20-CV-25259-CMA

EUNICE LOPEZ,

      Plaintiff,

v.

LIFE INSURANCE COMPANY
OF NORTH AMERICA, d/b/a CIGNA,

      Defendant.
_____/

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), hereby files its Reply in further support of its Motion for Summary Judgment [ECF 18] (the "MSJ") and in rebuttal to Plaintiff's Response in Opposition to Defendants' Motion [ECF 22] (the "Response").

**I.**    **LINA's Facts are Deemed Admitted**

Pursuant to Local Rule 56.1, LINA filed a Statement of Material Facts, consisting of forty (40) numbered paragraphs, and including pin-cites to the record to support each fact. *See* ECF 19 ("LINA's SMF"). While Plaintiff filed her own Statement with additional material facts[1] pursuant to L.R. 56.1(b)(2)(D), Plaintiff did not "challenge any purportedly material fact asserted by [LINA] that [Plaintiff] contends is genuinely in dispute" as required by Local Rule 56.1(a)(2). *See* ECF 23; *see also* L.R. 56.1(b)(2)(C)-(D). As Plaintiff did not dispute LINA's

---

[1] As shown by LINA's Reply to Plaintiff's SMF, the vast majority of these additional facts are consistent with LINA's own facts and, thus, undisputed by LINA. In addition, of the few facts that LINA disputes (or disputes in part) such disputes are largely based on Plaintiff's mis-paraphrasing of the information in the record, or because she strays from actual fact and gives conclusory opinions about her level of impairment.

SMF, which were well-supported by record evidence, they should be deemed admitted. L.R. 56.1(c).

As a point of correction, as stated in LINA's SMF, Plaintiff's employer, Brown & Brown, Inc., was the LTD Plan Administrator, while LINA was the claim administrator granted with discretionary authority to decide claims. *See* ECF 19 ¶¶ 2, 4. Plaintiff mistakenly refers to LINA at the "Plan" administrator at various places in her Response brief.

## II.     Plaintiff Failed to Demonstrate Entitlement to LTD Plan Benefits

### A.     Plaintiff's – Not LINA's – Burden

The theme of Plaintiff's Response is that LINA did not do enough to investigate her medical condition for her. Plaintiff is inappropriately shifting her burden as an ERISA claimant. Under the terms of the Plan and Eleventh Circuit precedent, it is the claimant's burden to submit proof sufficient to show entitlement to benefits. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1247 (11th Cir. 2008) (citing *Horton v. Reliance Standard Life Ins. Co.,* 141 F.3d 1038, 1040 (11th Cir. 1998)); LTD Plan 059. Indeed, the LTD Plan makes this burden clear:

> … The Employee must satisfy the Elimination Period, be under the Appropriate Care of a Physician, and meet all the other terms and conditions of the Policy. He or she must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid. The Disability Benefit is shown in the Schedule of Benefits.
>
> The Insurance Company will require continued proof of the Employee's Disability for benefits to continue.

ECF 19, ¶ 13; LTD Plan 059 [ECF 19-2]; *see Diaz v. Verizon Wireless Employee Benefits Committee*, No. 8:04-CV-2031-T-27MAP, 2006 WL 2470171, at *3 (M.D. Fla. 2006) ("[claim administrator] had no obligation to contact Plaintiff's physicians to request medical documentation as it is Plaintiff's responsibility to provide … all the necessary information to make a determination regarding his disability"), *aff'd* 222 F. App'x 879 (11th Cir. 2007).

Furthermore, it is not the claim administrator's burden to prove its decision was *not* arbitrary, but rather, it is always the claimant's burden to submit proof sufficient to show entitlement to benefits and also to show that the denial decision was arbitrary. *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011).

Plaintiff also confuses LINA's fiduciary obligations to administer claims under the LTD Plan with some perceived personal obligation owed to Plaintiff specifically. On the contrary, as the fiduciary charged with making claims determinations under the Plan, it is LINA's responsibility to fairly and consistently apply the Plan terms to all claims, so that <u>all</u> Plan participants receive the same treatment. *See, e.g.*, *DiSanto v. Wells Fargo & Co.*, 2007 WL 2460732, at * 13 (M.D. Fla. Aug. 24, 2007) (explaining that claim administrator must use objective standards to all claims analysis as it "owes its policy-holders a duty to investigate and seek objective support for the claimant's subjective complaints") (citing *Hufford v. Harris Corp.*, 322 F. Supp. 2d 1345, 1356 (M.D. Fla. 2004)).

      **B.**     **LINA's Decision was Based on Substantial Record Evidence**

Several times in Plaintiff's Response she accuses LINA of "cherry-picking" evidence that favored a denial of benefits. However, Plaintiff does not provide any support for that provocative statement, as she never points to any evidence that LINA or its reviewers ignored. On the contrary, LINA provided *all* of the evidence Plaintiff and Dr. Lopez submitted to its several peer-review specialists. *See* ECF 19, ¶¶ 25-26, 31, 32, 34, 36; ECF 19-1 (AR) at 435-37, 445-48, 550-52, 554-56, 577-81. The reality is Plaintiff simply failed to provide sufficient medical or psychological evidence to support her claim for LTD benefits under the terms of the LTD Plan. *See* ECF 19, ¶¶ 15-23, 25-27, 30-38.

As set forth in LINA's MSJ and SMF, the only records submitted by Plaintiff were from her neurologist, Dr. Lopez. ECF 19, ¶¶ 15-16, 18; ECF 18 at 1-6, 9-14. Plaintiff saw Dr. Lopez just once per month during the five months of May through September. ECF 19, ¶ 15. Although Dr. Lopez is a neurologist (not a psychiatrist or psychologist), both Plaintiff and Dr. Lopez identified Plaintiff's mental state, not migraines, as the reason she was unable to work. *See* ECF 19, ¶¶ 17, 19-21, 23; ECF 19-1 (AR) at 414, 428; ECF 22 at 10. Plaintiff does not dispute that she never submitted any records from any mental health providers. ECF 19, ¶ 18 (citing AR 500, 565). Indeed, LINA specifically pointed out to Plaintiff in its initial denial letter (dated November 14, 2021) that: "Additionally, there are no records from a treating psychologist and there were no further referrals to a psychiatrist." ECF 19, ¶ 27 (quoting AR 540). Notably, Dr. Lopez was the only treating provider Plaintiff identified in the LTD claim.[2] *See* ECF 19, ¶¶ 15, 18, 22; ECF 19-1 (AR) at 500, 565.

Plaintiff also seems to be arguing that LINA's peer-review specialists were inadequate. The only actual support she provides for this contention is to point out that Drs. Souayah, Burke, and Belcourt each state that in their assessments that Plaintiff's anxiety/depression is outside of their area of expertise. *See* Pl's SMF (ECF 23) ¶¶ 33, 38, 44. Notably, Dr. Souayah and Dr. Burke are both neurologists, just like Dr. Lopez. It is incongruous to complain that these

---

[2] Although Plaintiff states in her Response that she identified a therapist, Michelle Gonzalez on her initial claim form (*see* Resp. at 7), that was her STD, not LTD claim and the person listed was Michelle Gonales, not Gonzalez. *See* AR 064 (cited by Pl.); *see also* ECF 22 at 10 (Pl. refers to "Gonales"). As stated above, Plaintiff did not dispute that she never submitted any records from any mental health provider, nor did she claim at any time during the LTD review that she was actually seeing a mental health provider. As a further note, according to the Florida Department of Health, there is no mental health provider licensed in the Florida by the name Michelle Gonales. See https://mqa-internet.doh.state.fl.us/MQASearchServices/Home.ales. Finally, it was Plaintiff's obligation to submit any/all evidence, and not LINA's obligation to conduct google searches to try to locate a mis-named therapist. *See Diaz*, 2006 WL 2470171, at *3; ECF 22 (Resp.) at fn.2.

specialists lack the expertise to address Plaintiff's mental impairment but then argue that Dr. Lopez was the appropriate physician to treat her "physical symptoms of mental illness." ECF 22 (Pl. Resp.) at 12; *see also* ECF 18 at 11-12. Plaintiff overlooks that Dr. Predanic and Dr. Richardson are both board certified psychiatrists and gave thorough assessments of Plaintiff's mental condition. *See* ECF 19, ¶¶ 25-26, 34.

Further, Plaintiff's assertion that the specialist reviewers gave conclusory opinions and "fail to provide any detail" is contradicted by the Administrative Record. *See* ECF 22 (Pl. Resp.) at 14. Indeed, Dr. Predanic provided a thorough and specific assessment of several key points from Dr. Lopez's treatment records, MRFs and BHQs in reaching the conclusion that there were "[n]o restrictions medically necessary due to psychiatric condition." ECF 19, ¶ 25. Dr. Predanic explained that "[t]he treating provider's opinion is not well supported by medically acceptable clinical diagnostic techniques including mental status examinations, psychological and/or neuropsychological testing and is inconsistent with the other substantial evidence in the claim file," and provided several comparative examples of the lack of support or consistency, including:

- Despite documenting severe depression and anxiety symptoms, even as of 5/13/19 and throughout the records, MSEs <u>are essentially completely normal, indicating Ms. Lopez presents as well appearing, well groomed, with normal speech, awake and alert, fully oriented, with recent/remote memory and attention span/concentration normal</u>. There is denial of suicidal and homicidal thinking, no psychotic symptoms. BHQs document depressed mood and anxious affect, with "preoccupied/pathological" thought content, <u>although this is not clarified/described</u>. These limited MSE abnormalities <u>are inconsistent with presentation of a severe psychiatric condition</u>.
- There is also <u>inconsistency noted between the OVNs documentation of symptom improvements with documentation in 4 BHQs and 3 MRFs that do not reflect any improvements</u>, continuing to assert there's "severe psychomotor depression with anhedonia", Ms. Lopez is "in the midst of a severe bout of depression" and "unable to function in any setting due to the depth of her symptoms".

5

- <u>Lack of functional impairments are further corroborated by Ms. Lopez' 9/20/19 [Disability Questionnaire]</u>, where she reports she is able to cook, clean, launder, read/watch TV, reading, writing and drawing are her hobbies, she does cardio exercise, drives and uses computer/smart phone all the time.

- Finally, <u>there are no records from the treating psychologist</u>, and while Dr. Lopez indicated on 5/13/19 she has not seen a psychiatrist, there were no further referrals to a psychiatrist. Monthly follow-up by Dr. Lopez and <u>lack of aggressive psychotropic meds management are indicators of low severity of treatment, which would not be expected to be adequate, if Cx's psychiatric condition was severe and work precluding</u>.

ECF 19, ¶ 25 (quoting AR 436-37) (underlining added). Dr. Richardson also discussed Dr. Lopez's treatment records in detail. *See* ECF 19, ¶ 34 (citing AR 577-80). Thus, as shown by these specialists' thorough reviews, there was no "cherry-picking".

In addition to Plaintiff shifting her legal burden when complaining that LINA did not do enough to investigate her condition, the undisputed facts show that LINA diligently carried out its fiduciary duties as the claim administrator for the LTD Plan. Indeed, Plaintiff's complaint that LINA and/or the peer reviewers did not make adequate attempts to contact Dr. Lopez are belied by the Administrative Record. LINA contacted Dr. Lopez on September 11, 2019; October 10, 2019; and October 30, 2019, asking him to provide further support regarding Plaintiff's condition. *See* ECF 19-1 (AR) at 462, 509-10, 513-14. In addition, Dr. Burke attempted to conduct a peer-to-peer discussion with Dr. Lopez but messages left with an office assistant on January 12, 2020 and January 14, 2020 were not returned. ECF 19, ¶ 33. Dr. Richardson also attempted to conduct a peer-to-peer discussion with Dr. Lopez, and pursuant to the instructions from Dr. Lopez's staff on January 21, 2020, Dr. Richardson sent a fax to Dr. Lopez with his questions on January 22, 2020, but did not receive a response at any time prior to LINA's appeal determination on March 5, 2020. ECF 19, ¶ 35 (citing AR 580-81). Furthermore, it is not the claim administrator's burden "to contact Plaintiff's physicians to request medical documentation as it is Plaintiff's responsibility to provide … all the necessary

information to make a determination regarding [her] disability" *Diaz*, 2006 WL 2470171, at *3. In addition, on December 5, 2019 and again on February 6, 2020, LINA sent Plaintiff requests that she submit any additional records available to support her claim, and the February 6, 2020 letter also transmitted to Plaintiff the peer reviewer opinions and specifically invited her to provide a response. ECF 19, ¶¶ 29, 37.

Plaintiff's complaints that LINA inappropriately credited the opinions of its specialist reviewers over Dr. Lopez are also misplaced. It is well-settled that ERISA claim administrators are not required to give special deference to the opinions of treating physicians over peer reviewers. *Blankenship*, 644 F.3d at 1356 (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831-32 (2003)). As the Supreme Court explained in *Nord*, courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* at 834; *see also Shaw v. Conn. Gen. Life Ins. Co.*, 353 F.3d 1276, 1287 (11th Cir.2003). The opinions rendered by the several peer reviewers show that they did, indeed, review Dr. Lopez's records in detail, thus there is nothing in the record indicating that LINA acted unreasonably in relying on the opinions of the peer reviewers over the opinion of Dr. Lopez. *See Blankenship*, 644 F.3d at 1356.

Finally, Plaintiff's reliance on *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189 (11th Cir. 2010), to support her argument that LINA was required "to interview witnesses," is misplaced. *See* Pl's Resp. (ECF 22) at 9 (also citing *Prelutsky v. Greater Ga. Life Ins Co*. 692 F. App'x 969 (11th Cir. 2017)). Both *Capone* and *Prelutsky* involve accidental injuries caused, at least in part, by intoxication, and resulting long-term impairment. In both cases, the issue of whether the injury and long-term disability was caused as a direct result of the intoxication was at issue, which, as the Eleventh Circuit noted, can sometimes be informed by witness accounts. However,

nothing in either *Capone* or *Prelutsky* states that a plan fiduciary making a determination of a non-accident related long-term disability claim must interview witnesses. Indeed, the *Prelutsky* Court pointed out "a plan administrator is permitted to rely on medical evidence over a conflicting witness account, even when that account comes from a reliable eyewitness to the accident." *Prelutsky*, 692 F. App'x at 974 (citing/discussion *Capone*, where witnesses were available). There was no accident involved in this case, and LINA and the specialist reviewers considered all of the information submitted by Plaintiff, which included records from Dr. Lopez, as well as Plaintiff's own statements. *See* ECF 19, ¶¶ 22, 25-27, 39. Indeed, Plaintiff reported in her Disability Questionnaire completed on September 20, 2019, that her regular activities and hobbies included cooking, cleaning, laundry, reading, watching TV, drawing, and cardio exercise, which Dr. Predanic explained showed that Plaintiff was not suffering from a disabling mental condition. *See* ECF 19, ¶ 22 (citing AR 502), ¶ 25.

      **C.**     **No Evidence that Decision was Influenced by Conflict**

Plaintiff gives a lengthy discussion of the Eleventh Circuit and Supreme Court decisions addressing the conflict of interest issue for ERISA claims administrators, but then fails to present any facts or evidence to demonstrate that LINA suffers from anything other than the standard structural conflict that is well-recognized in the ERISA case law. While LINA does not dispute that it both insures the payment and makes the claims determinations, "[t]he presence of a structural conflict of interest – an unremarkable fact in today's marketplace – constitutes no license, in itself, for a court to enforce its own preferred *de novo* ruling about a benefits decision." *Blankenship*, 644 F.3d at 1356. Moreover, "[t]he burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Blankenship*, 644 F.3d at 1357; *see also Capone*, 592 F.3d at 1196

(quoting *Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352, 1360 (11th Cir. 2008)); *Dawson v. Cigna Corp.*, 261 F. Supp. 3d 1275, 1295 (S.D. Fla. 2017).

Plaintiff pointed to no evidence indicating LINA acted in bad faith or had anything other than a routine structural conflict. The Eleventh Circuit advises that the analysis should remain centered on whether a reasonable basis existed for LINA's decision. *See Blankenship*, 644 F.3d at 1355. As set forth in LINA's MSJ, and also above, LINA provided specific, detailed reasons supporting its denial of Plaintiff's request for LTD benefits. Simply stated, it was the lack of supporting medical and mental treatment records, not any conflict of interest, that dictated the denial of Plaintiff's claim for LTD benefits.

## III.  CONCLUSION

For all the reasons set forth herein, and in LINA's MSJ [ECF 18], LINA respectfully requests that this Court grant summary judgment in its favor and award LINA its attorney's fees and costs incurred in the defense of this ERISA action.[3]

Dated: July 19, 2021

Respectfully submitted,

s/ Shari Gerson
SHARI GERSON
Florida Bar No. 17035
GRAYROBINSON, P.A.
Email: Shari.Gerson@gray-robinson.com
401 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Telephone: 954-761-8111
Facsimile: 954-761-8112

and

Kelly J.H. Garcia
Florida Bar No. 0694851

---

[3] At the conclusion of Plaintiff's Response, she requests an award of past benefits and attorneys' fees; however, she has not moved for summary judgment, thus any such award would be inappropriate *even if* the Court denies LINA's Motion.

Email: kelly.garcia@gray-robinson.com
GRAYROBINSON, P.A.
301 E. Pine Street, Suite 1400
Orlando, FL  32802-3068
Telephone: 407-843-8880
Facsimile: 407-244-5690

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of July, 2021 I have electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that the foregoing document is being served on the following Plaintiffs' counsel via transmission of Notices of Electronic Filing generated by CM/ECF: Maria T. Santi, Your Insurance Attorney, PLLC, Health and Medicine Law Firm Division, 2601 S. Bayshore Drive, 18th Floor, Miami, FL 33133, Tel: 305-444-5969, email: msanti@yourinsuranceattorney.com, or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ *Shari Gerson*
Shari Gerson, Esq.,
Florida Bar No. 017035