UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:20-CV-25259-CMA

EUNICE LOPEZ,

        Plaintiff,

v.

LIFE INSURANCE COMPANY
OF NORTH AMERICA, d/b/a CIGNA,

        Defendant.
_____/

## DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant, Life Insurance Company of North America ("LINA"), hereby files its Proposed Findings of Fact and Conclusions of Law in accordance with Rule 16.1(k) of the Local Rules of the Southern District of Florida and this Court's Order Setting Bench Trial and Pre-Trial Schedule [ECF 9] entered on February 5, 2021, as follows:

**A.**    **Findings of Fact**

1.    Plaintiff worked as a Personal Account Manager for Brown & Brown, Inc., and was a Class 2 participant in the Brown & Brown, Inc. Long Term Disability Plan (the "Plan"). AR 344-45, 733; LTD Plan 034.

2.    The Plan is a welfare benefits plan governed by ERISA. Brown & Brown is the Plan Sponsor and Plan Administrator. The Plan is insured through a group insurance policy, LK-980281, issued by LINA to Brown & Brown. LTD Plan 001, 007, 009, 034.

3.    LINA is the appointed claim administrator for the Plan and granted with discretionary authority to adjudicate claims for benefits, including appeals of denied claims. LTD Plan 034-035, 116.

4. Plaintiff's job was sedentary in nature and she was generally responsible for account management and sales of personal lines insurance products. AR 344-45, 501.

5. Plaintiff stopped working on May 14, 2019 (at age 37) due to anxiety and depression. AR 203, 501. Plaintiff also had a history of migraines. AR 134-36, 199-201, 206-208, 412-414, 426-428. However, Plaintiff confirmed in her written brief to this Court that she considers the mental condition to be her disabling condition. ECF 22 at 10. The records also establish that her migraines were not disabling during the relevant time period. AR 199, 203, 412-13, 426-27, 501.

6. The Plan has a 90-day Elimination Period, during which period the claimant must demonstrate continuous disability under the terms of the Plan. LTD Plan 059, 091.

7. Plaintiff initiated her claim for LTD benefits in August 2019. AR 043. LINA received records from Plaintiff's treating neurologist, Javier Lopez, M.D. ("Dr. Lopez"), for offices visits from May through September 2019. AR 134-136, 199-201, 206-08, 412-14, 426-28.

8. The Plan defines disability as follows:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is either:
> 1. unable to perform any or all of the material and substantial duties of his or her Regular Occupation; or
> 2. unable to earn 80% or more of your Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is either:
> 1. unable to perform any or all of the material and substantial duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; or
> 2. unable to earn 80% or more of his or her Indexed Earnings.

LTD Plan 052.

9. The Plan requires the claimant to submit satisfactory proof of disability:

>**Disability Benefits**
>The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. The Employee must satisfy the Elimination Period, be under the Appropriate Care of a Physician, and meet all the other terms and conditions of the Policy. He or she must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid. The Disability Benefit is shown in the Schedule of Benefits.
>
>The Insurance Company will require continued proof of the Employee's Disability for benefits to continue.

LTD Plan 059.

10. "Appropriate Care" is defined by the Plan as:

>Appropriate Care means the Employee:
>1. Has received treatment, care and advice from a Physician who is qualified and experienced in the diagnosis and treatment of the conditions causing Disability. If the condition is of a nature or severity that it is customarily treated by a recognized medical specialty, the Physician is a practitioner in that specialty.
>2. Continues to receive such treatment, care or advice as often as is required for treatment of the conditions causing Disability.
>3. Adheres to the treatment plan prescribed by the Physician, including the taking of medications.

LTD Plan 070.

11. The only records received by LINA were from Dr. Lopez. No records from any psychologist, psychiatrist or mental health therapist were submitted by Plaintiff. AR 500, 565.

12. In the Disability Questionnaire completed by Plaintiff dated September 20, 2019, she reported her regular activities as cooking, cleaning, laundry, reading and watching TV, and her hobbies were reading, writing and drawing. AR 502. She also reported doing regular cardio exercise at home. AR 502. She identified Dr. Lopez as her only treating physician. AR 500.

13. In the September 20, 2019 Disability Questionnaire, Plaintiff described the reason for not working as follows: "My profession as an insurance agent in Florida is extremely stressful and the current office environment exacerbates the mental stress and worsens my depression and anxiety." AR 501.

3

14. In conducting its review of Plaintiff's claim for LTD benefits, LINA obtained physician reviews by a board-certified psychiatrist, Dr. Aneta Predanic, and a board-certified neurologist, Dr. Nizar Souayah. AR 435-38, 445-49, 521-25.

15. Dr. Predanic reviewed all of Dr. Lopez's office visit notes, Medical Request Forms and Behavioral Health Questionnaires. AR 435. Dr. Predanic concluded that Plaintiff was not functionally limited and there were "[n]o restrictions medically necessary due to psychiatric condition." AR 437. Dr. Predanic explained that "[t]he treating provider's opinion is not well supported by medically acceptable clinical diagnostic techniques including mental status examinations, psychological and/or neuropsychological testing and is inconsistent with the other substantial evidence in the claim file," (AR 436) and went on to provide several comparative examples of the lack of support or consistency (AR 436-37). For example, and specifically, Dr. Predanic explained that:

- Despite documenting severe depression and anxiety symptoms, even as of 5/13/19 and throughout the records, <u>MSEs [mental status exams] are essentially completely normal, indicating Ms. Lopez presents as well appearing, well groomed, with normal speech, awake and alert, fully oriented, with recent/remote memory and attention span/concentration normal</u>. There is denial of suicidal and homicidal thinking, no psychotic symptoms. BHQs [Behavioral Health Questionnaires] document depressed mood and anxious affect, with "preoccupied/pathological" thought content, although this is not clarified/described. <u>These limited MSE abnormalities are inconsistent with presentation of a severe psychiatric condition</u>.

- There is also <u>inconsistency noted between the OVNs [office visit notes] documentation of symptom improvements with documentation in 4 BHQs and 3 MRFs [Medical Request Forms] that do not reflect any improvements</u>, continuing to assert there's "severe psychomotor depression with anhedonia", Ms. Lopez is "in the midst of a severe bout of depression" and "unable to function in any setting due to the depth of her symptoms".

- <u>Lack of functional impairments are further corroborated by Ms. Lopez' 9/20/19 [Disability Questionnaire]</u>, where she reports she is able to cook, clean, launder, read/watch TV, reading, writing and drawing are her hobbies, she does cardio exercise, drives and uses computer/smart phone all the time

- Finally, <u>there are no records from the treating psychologist</u>, and while Dr. Lopez indicated on 5/13/19 she has not seen a psychiatrist, there were no further referrals

4

>    to a psychiatrist. Monthly follow-up by Dr. Lopez and <u>lack of aggressive psychotropic meds management are indicators of low severity of treatment, which would not be expected to be adequate, if Cx's psychiatric condition was severe and work precluding</u>.

AR 436-37 (emphasis added).

16.     Dr. Souayah also reviewed all of Dr. Lopez's office notes, Medical Request Forms and Behavioral Health Questionnaires. AR 445–448. Dr. Souayah concluded that "from a neurological standpoint, there is no evidence Ms. Lopez is functionally limited. The claimant's headache condition is stable. … No work restrictions are supported." AR 448.

17.     LINA notified Plaintiff that it was denying her claim for LTD benefits via letter dated November 14, 2019. AR 538–542. The letter explained the basis for the denial, and specifically advised:

>    Additionally, there are no records from a treating psychologist and there were no further referrals to a psychiatrist. Monthly follow-up by Dr. Lopez and lack of aggressive psychotropic medication management are indicators of low severity of treatment, which would not be expected to be adequate to support a claim of a psychiatric impairment would preclude one from working.

AR 540. The letter also detailed the reviews conducted and opinions reached by the two medical directors specializing in Neurology (Dr. Souayah), and Behavioral Health (Dr. Predanic). AR 540–541.

18.     Following receipt of Plaintiff's appeal of the LTD denial, LINA commenced an appeal review of her claim. AR 519-20. On December 5, 2019 and again on February 6, 2020, LINA sent Plaintiff requests that she submit any additional records available to support her claim. AR 531-32, 571-72.

19.     Plaintiff did not submit any new records during the appeal process. AR 565.

20.     During the appeal process, LINA had Plaintiff's file reviewed by the following medical specialists: (1) David Burke, MD, Board Certified in Neurology, AR 550-52, 565;

5

(2) Elbert Greer Richardson, MD, Board Certified in Psychiatry, AR 565, 577-81; (3) Roger Belcourt, MD, Board Certified in Occupational Medicine, AR 554-56, 565.

21.   Dr. Burke concluded that Plaintiff did not require any medically necessary work restrictions from a neurological standpoint.  AR 551.  Dr. Burke noted that as of the September 6, 2019 office visit with Dr. Lopez, Plaintiff's headaches were generally better.  AR 551.

22.   Dr. Burke attempted to conduct a peer-to-peer discussion with Dr. Lopez but was unsuccessful.  AR 552, 566.

23.   Dr. Richardson opined that the medical information provided did "not support psychiatric functional limitations," and "[n]o restrictions are required from the perspective of psychiatry."  AR 580.  Dr. Richardson stated that Dr. Lopez's "opinion is not well supported by medically acceptable clinical or laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the claim file," and went on to discuss the various records in detail.  AR 577-580.  He noted that while Plaintiff reported ongoing symptoms, her mental status exam findings were within normal limits and her neurological exam indicated no cognitive impairments.  AR 580.  He further explained that the documentation "lacks objective evidence to support these symptoms are of a level of severity that would limit functioning."  *Id.*

24.   Dr. Belcourt concluded that "[t]here is no documentation of objective functional deficits for which restrictions would be indicated as a result of these conditions" and that "Ms. Lopez does not require any medically necessary work activity restrictions."  AR 555.

25.   Dr. Richardson also attempted to conduct a peer-to-peer discussion with Dr. Lopez. On January 21, 2020 Dr. Richardson was advised by Dr. Lopez's office assistant to submit applicable questions via facsimile to Dr. Lopez's attention. Dr. Richardson did as instructed but did not receive a response at any time prior to LINA's appeal determination on March 5, 2020.  AR 566, 580-81.

26. On February 6, 2020, LINA sent Plaintiff copies of the three medical reviews obtained by LINA during the appeal process and invited her to provide any response by March 5, 2020. AR 572. Plaintiff did not submit any response to the specialists' reports. AR 565.

27. LINA completed a comprehensive review of all the medical evidence and submissions by Plaintiff and determined that evidence submitted did not demonstrate the existence of an impairment sufficient to establish entitlement to LTD benefits under the Plan. By letter dated March 5, 2020, LINA notified Plaintiff of its appeal determination upholding the denial of LTD benefits. AR 564-68.

B. **Conclusions of Law**

1. ERISA applies to this action and the determination of whether the Plaintiff is entitled to her disability benefits.

2. In an ERISA disability benefits denial case, "the district court sits more as an appellate tribunal than as a trial court." *Curran v. Kemper Nat. Servs., Inc.*, 2005 WL 894840, at *7 (11th Cir. Mar. 16, 2005) (quoting *Leahy v. Raytheon Co.*, 315 F.3d 11, 17-18 (1st Cir. 2002)); *Dawson v. Cigna Corp.*, 261 F.Supp.3d 1275, 1283 (S.D. Fla. 2017); *Ponce v. Life Ins. Co. of N. Am.*, No. 11-81100-CIV, 2012 WL 4481827, at *4 (S.D. Fla. Sept. 28 2012); *Bloom v. Hartford Life & Acc. Ins. Co.*, 917 F.Supp.2d 1269, 1276 (S.D. Fla. 2013) (citation omitted), *aff'd* 558 F. App'x 854 (11th Cir. 2014); *Crume v. Metro. Life Ins. Co.,* 417 F.Supp.2d 1258, 1272 (M.D. Fla. 2006). The court "evaluates the reasonableness of an administrative determination in light of the record compiled before the administrator." *Curran*, 2005 WL 894840, at *7; *Dawson*, 261 F.Supp.3d at 1283; *Bloom*, 917 F.Supp.2d at 1276; *Ponce*, 2012 WL 4481827, at *4; *Turner*, 2011 WL 1542078, at *4; *Crume*, 417 F.Supp.2d at 1272

3. For ERISA claims "[t]he Eleventh Circuit charges the district court with determining *de novo* whether the administrator's decision was wrong." *Meadows v Am. Airlines,*

*Inc.*, No. 10–22175–CIV-ALTONAGA/Brown, 2011 WL 1102774, at *8 (Mar. 24, 2011) (citing *Williams*, 373 F.3d at 1138, and *Pinto*, 2011 WL 536443 at *8); *accord Dawson*, 261 F.Supp.3d at 1283-84.

    4.      The Eleventh Circuit lays out a six-step analysis for reviewing a benefits decision under ERISA:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011).

    5.      It is the claimant's burden to submit proof sufficient to show entitlement to benefits. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1247 (11th Cir. 2008) (citing *Horton v. Reliance Standard Life Ins. Co.,* 141 F.3d 1038, 1040 (11th Cir. 1998)); LTD Plan 059; *accord Blankenship*, 644 F.3d at 1355.

6. The Court is able to conclude its analysis at step one because the Plaintiff failed to provide evidence sufficient to show a medical or mental condition that would satisfy the Plan's definition of disability. Therefore, LINA's decision was not wrong.

7. Furthermore, LINA is granted with discretionary authority under the Plan. LTD Plan 034-035, 116

8. ERISA claim administrators are not required to give special deference to the opinions of treating physicians over peer reviewers. *Blankenship*, 644 F.3d at 1356 (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831-32 (2003)). As the Supreme Court explained in *Nord*, courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* at 834; *see also Shaw v. Conn. Gen. Life Ins. Co.*, 353 F.3d 1276, 1287 (11th Cir.2003).

9. The opinions rendered by the several peer reviewers show that they did, indeed, review Dr. Lopez's records in detail; thus, there is nothing in the record indicating that LINA acted unreasonably in relying on the opinions of the peer reviewers over the opinion of Dr. Lopez. *See Blankenship*, 644 F.3d at 1356.

10. LINA's determination that the medical evidence provided by Plaintiff did not show that an impairment sufficient to establish entitlement to LTD benefits under the Plan was based upon a thorough review of Plaintiff's records and the entire file and with consideration of the opinions of the specialist reviewers. Thus, LINA's determination was both correct and reasonable.

11. While LINA both insures the payment and makes the claims determinations, "[t]he presence of a structural conflict of interest – an unremarkable fact in today's marketplace – constitutes no license, in itself, for a court to enforce its own preferred *de novo* ruling about a

benefits decision." *Blankenship*, 644 F.3d at 1356. Moreover, "[t]he burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Blankenship*, 644 F.3d at 1357; *see also Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1196 (11th Cir. 2010) (quoting *Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352, 1360 (11th Cir. 2008)); *Dawson v. Cigna Corp.*, 261 F. Supp. 3d 1275, 1295 (S.D. Fla. 2017).

12. Plaintiff pointed to no evidence indicating LINA acted in bad faith or had anything other than a routine structural conflict. Thus, the Eleventh Circuit advises that the analysis should remain centered on whether a reasonable basis existed for LINA's decision. *See Blankenship*, 644 F.3d at 1355.

13. LINA's decision letters provided specific reference to the information provided by Plaintiff's physician, detailed the opinions of the peer reviewers, and advised Plaintiff of the need for further information from a mental health provider. Plaintiff failed to submit any mental health therapy records or any additional information from any treater other than Dr. Lopez.

14. LINA was not obligated to conduct witness interviews or seek out additional records that were not submitted by Plaintiff, because it always remains Plaintiff's burden to submit proof of entitlement to benefits. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1247 (11th Cir. 2008) (citing *Horton v. Reliance Standard Life Ins. Co.,* 141 F.3d 1038, 1040 (11th Cir. 1998); *Diaz v. Verizon Wireless Employee Benefits Committee*, No. 8:04-CV-2031-T-27MAP, 2006 WL 2470171, at *3 (M.D. Fla. 2006) ("[claim administrator] had no obligation to contact Plaintiff's physicians to request medical documentation as it is Plaintiff's responsibility to provide … all the necessary information to make a determination regarding his disability"), *aff'd* 222 F. App'x 879 (11th Cir. 2007).

15. Furthermore, LINA's obligation as the claim fiduciary to make claims determinations under the Plan is to fairly and consistently apply the Plan terms to all claims, so that all Plan participants receive the same treatment. *See, e.g.*, *DiSanto v. Wells Fargo & Co.*, 2007 WL 2460732, at * 13 (M.D. Fla. Aug. 24, 2007) (explaining that claim administrator must use objective standards to all claims analysis as it "owes its policy-holders a duty to investigate and seek objective support for the claimant's subjective complaints") (citing *Hufford v. Harris Corp.*, 322 F. Supp. 2d 1345, 1356 (M.D. Fla. 2004)).

16. Based upon the Court's *de novo* review of the Administrative Record and Plan terms, it concludes that LINA's decision to deny LTD benefits was both correct and reasonable.

17. Pursuant to 28 U.S.C. 1132(g)(1) and the guidance provided by *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010), the Court concludes that LINA is entitled to recovery its reasonable attorney's fees for having to defend against this action.

Dated: September 7, 2021                                   Respectfully submitted,

s/ *Kelly Garcia*
SHARI GERSON
Florida Bar No.  17035
GRAYROBINSON, P.A.
Email:  Shari.Gerson@gray-robinson.com
401 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida  33301
Telephone:  954-761-8111
Facsimile:  954-761-8112

and

Kelly J.H. Garcia
Florida Bar No. 0694851
Email: kelly.garcia@gray-robinson.com
GRAYROBINSON, P.A.
301 E. Pine Street, Suite 1400
Orlando, FL  32802-3068
Telephone: 407-843-8880
Facsimile: 407-244-5690

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of September, 2021 I have electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that the foregoing document is being served on the following Plaintiffs' counsel via transmission of Notices of Electronic Filing generated by CM/ECF: Maria T. Santi, Your Insurance Attorney, PLLC, Health and Medicine Law Firm Division, 2601 S. Bayshore Drive, 18th Floor, Miami, FL 33133, Tel: 305-444-5969, email: msanti@yourinsuranceattorney.com, or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                                s/ *Kelly Garcia*
                                                                Kelly J. H. Garcia, Esq.,
                                                                Florida Bar No. 0694851