UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-CV-25259-CMA

EUNICE LOPEZ,

        Plaintiff,

vs.

LIFE INSURANCE COMPANY OF NORTH AMERICA
d/b/a CIGNA,

        Defendant.
_____/

**PLAINTIFF'S PROPOSED FINDING OF FACTS AND CONCLUSIONS OF LAW**

COMES NOW, Plaintiff, EUNICE LOPEZ (hereinafter "Plan Beneficiary"), pursuant to Local Rule 16.19(k) and the Order Setting Bench Trials and Pre-Trial Schedule dated February 5, 2021 ECF No. 9 through her undersigned counsel, and files her Proposed Finding of Facts and Conclusions of Law, and states as follows:

### I.    **Findings of Fact**

1. The Plan Beneficiary was employed by Brown & Brown, Inc. and was hired on or about August 03, 2015. See AR[1] 457.

2. Brown & Brown, Inc. secured a welfare benefits plan that was issued by the Insurance Company, Life Insurace Company of North America d/b/a Cigna. ECF No. 1-3.

3. The Insurance Company was the Plan and claims administrator for the Employer, Brown & Brown, Inc. See ¶15, Comp.

4. The Plan is a group plan for Long Term Disability benefits governed by ERISA. *See* ¶14, Comp.; *See also* ¶23, Comp.; *See also* ECF No. 1-3..

5. On or about May 15, 2019, the Plan Beneficiary stopped working due to anxiety

---

[1] AR refers to the Administrative Record, ECF No. 19-1.

and depression. *See* ¶16, Comp. She immediately reported the Claim and provided authorization to allow the Insurance Company to obtain her medical records. AR 063-066.

6. When the Plan Beneficiary reported the claim she provided information on her treating providers. Michelle Gonales, Phone 305-445-0477 is listed along with Javier Lopez Phone 305-665-6501. AR 062-064.

7. The Plan Beneficiary notified the Insurance Company of her disability due to her mental state and provided medical information from her treating physician. *See* ¶18, Comp. AR 456-457.

8. The Insurance Company granted the Plan Beneficiary short term disability benefits for a period of about 90 days. The period of short term disability benefits began May 29, 2019 through approximately August 12, 2019. AR 139, 168.

**Terms of the Long Term Disability Plan**

9. Disability, according to the policy, is defined as:

"You are considered disabled if, solely because of **injury or sickness**, you are either: 1) unable to perform any or all of the material and substantial duties of your regular occupation; or 2) unable to earn 80% or more of your indexed earnings from working in your regular occupation."

*See* Pg. 3, ECF No. 1-3.

10. Sickness is defined as:

"The term sickness means a physical or mental illness."

*See* Pg. 27, ECF No. 1-3.

11. There are limited benefit periods for mental or nervous disorders, defined as follows:

"The Insurance Company will pay disability benefits on a limited basis during an Employee's lifetime for a disability caused by, or contributed to by, any one or more of the following conditions. Once 24 monthly disablity benefits have been paid, no further benefits will be payable for any of the following conditions.

   1) anxiety disorders
   2) delusional (paranoid) disorders
   3) depressive disorders
   4) eating disorders
   5) mental illness
   6) somatoform disorders (psychosomatic illness)."
*See* Pg. 18, ECF No. 1-3.

**<u>Application for Long Term Disability Benefits</u>**

   12. On or about August 12, 2019, the Plan Beneficiary was still unable to work and sought long term disability benefits from the Insurance Company. The Insurance Company confirmed receipt of the application for long term disability benefits on September 11, 2019. AR 477.

   13. On November 14, 2019, the Insurance Company denied the request for long term disability benefits. AR 521-525, 536.

   14. In the denial letter dated November 14, 2019, the Insurance Company only noted that they determined she was not functionally limited due to psychiatric or functional impairment. There was no mention of any determinations being made by any treating providers. AR 521-525.

   15. In the letter dated November 14, 2019, the Insurance Company acknowledged that they did not continue outreach to the Plan Beneficiary's treating physician, even though they were aware that there was a scheduled visit for the Plan Beneficiary on October 11, 2019. AR 523.

   16. On or about November 19, 2019, the Plan Beneficiary sought appeal of the decision to deny the benefits made by the Insurance Company. AR 519.

   17. The Plan Beneficiary was scheduled to continue treatment with Dr. Lopez in October 2019. AR 523.

   18. The Insurance Company sent a letter to the Plan Beneficiary dated January 10, 2020 that the Insurance Company required an extension of time due to the appeal being under review.

AR 546.

19.     On the date of the January 10, 2020 letter, the Insurance Company had not attempted any contact with Dr. Lopez. See AR 546, 552, 580-581.

20.     On February 6, 2020 and March 5, 2020, the Insurance Company upheld its decision to deny Long Term Disabilty benefits. AR 564-573.

**Medical Review of Physicians Hired By Insurance Company**

21.     The Insurance Company sought the review of Dr. Aneta Predanic. AR 435-437.

22.     Dr. Predanic listed in her reason for referral the following "the treating provider, Dr. Lopez, restricts from work, ERTW date of 01/06/20 identified. Dx(s) of major depressive disorder, anxiety noted […]"AR 435.

23.     Dr. Predanic lists her file review as "medical records in the file include treatment records from Javier Lopez, MD, neurology, extending from 5/13/19 through 9/6/19 – 5 OVNs, 5/14/19 work not.,"

24.     Dr. Predanic notes "[m]y medical analysis has determined that the following are co-limiting psychiatric conditions, with respective associated limitations and restrictions no co-limiting conditions identified." AR 436

25.     Dr. Predanic also notes "the following conditions are out of my area of expertise and I have not included consideration of them in my analysis: migraines." AR 437

26.     Dr. Predanic was asked "is the customer functionally limited?" Dr. Predanic answered "no." See AR 437

27.     Dr. Predanic was asked "cnsidering the customer's funcitonal limitations and the treatment(s) required for their condition(s), what medically necessary activity restrictions are appropriate?" Dr. Predanic answered "no restrictions are medically necessay due to psychiatric

condition." See AR 437

28. The Insurance Company sought the review of Dr. Nizar Souayah. See AR 445-449

29. Dr. Souayah listed the reason for referral as "current medical on file does not support the no work restriction by Dr. Javier Lopez MD/neurology his MRF dated 09/11/2019 […]." See AR 445

30. Dr. Souayah lists the file review as "medical records in the file include treatment records from Javier Lopez, MD (neurology) and others as listed below extending from 05/13/2019 to 09/11/2019: Cigna disclosure authorization from: 05/22/2019; Javier Lopez, MD (neurology), fitness for duty certification: 08/09/2019; Javier Lopez, MD (neurology), Cigna behavioral health questionnaires: 06/18/2019 through 09/11/2019; Javier Lopez, MD (neurology), Cigna medical reqeust forms: 05/23/2019 through 09/11/2019; Javier Lopez, MD (neurology), letter: 05/14/2019; Javier Lopez, MD (neurology), clinical records: 05/13/2019 through 09/06/2019; Richard Zelesnik, RN (registered nuruse), NCM case plan documentation: undated." See AR 445

31. Dr. Souayah was asked "is Ms. Lopez functionally limited? If so, describe how Ms. Lopez is functionally limited." Dr. Souayah responded "No, in my professional opinion and from a neurological standpoint, there is no evidence Ms. Lopez is funcitonally limited. The claimant's headache condition is stable. Her major issues are depression and anxiety ,which I would defer comment on to a specialist." See AR 448

32. Dr. Souayah was asked "considering Ms. Lopez's functional limitations and treatment(s) required for their condition(s), what medically necessay activity restrictions are appropriate?" Dr. Souayah responded "no work restrictions are supported." See AR 448

33. Dr. Souayah notes "the following conditions are out of my area of expertise and I have not included consideration of them in my analysis: mental health conditions." See AR 448

**Post Appeal Medical Review By Physicians Hired By the Insurance Company**

34. The Insurance Company sought the review of a hired physician, Dr. David Burke. See AR 550-552

35. Dr. Burke listed his reason for referral as neurology. See AR 550

36. Dr. Burke listed as part of his file review, that he reviewed the "medical records in the file including treatment records from: Javier E. Lopez, MD (Neurology): extending from 5/14/19 to 0/10/19; Aneta Predanic, MD (Adult Psychiatry): on 10/24/19; Nizar Souayah, MD (Neurology) (neuromuscular medicine) (electrodiagnostic medicine): on 11/11/19." AR 550.

37. Dr. Burke lists that a co-limiting condition which may independently or collective impact the customer's functionality was "migraines, no R/L's are indicated." See AR 550

38. Dr. Burke ultimately notes that "[t]he following conditions are out of my area of expertise and I have not included consideration of them in my analysis: depression, anxiety." See AR 552.

39. Dr. Burke only attempted to contact Dr. Lopez twice via phone. See AR 552. Dr. Burke attempted contact once on January 13, 2020 and the second time on January 14, 2020. There are no other noted attempts to contact Dr. Lopez for a peer-to-peer discussion. See AR 552

40. The Insurance Company sought the review of a hired physician, Dr. Roger Belcourt. See AR 554-556

41. Dr. Belcourt listed his reason for referral as occupational medicine. See AR 554

42. Dr. Belcourt listed his review as "medical records in the file include treatment records from: Javier Lopez, MD (neurology): extending from 5/13/19 to 9/11/19." See AR 554.

43. Dr. Belcourt lists the the Plan Beneficiary is not functionally limited as a result of the co-morbid conditions such as PCOS, uterine fibroids, hypercoagulable state, and sleep

paralysis. See AR 555

44. Dr. Belcourt ultimately notes that "[t]he following conditions are out of my area of expertise and I have not included consideration of them in my analysis: migraines, depression." See AR 556.

45. The Insurance Company sought the expertise of a hired physician, Dr. Elbert Greer Richardson. See AR 558-561

46. Dr. Richardson listed his reason for referral as behavioral medicine. See AR 558

47. Dr. Richardson listed that his file review consisted of "medical records in the file include treatment records from: Javier E. Lopez, MD (Neurlogy): extending from 5/14/19 to 10/10/19; Aneta Predanic, MD (adult psychiatry): on 10/24/19; Nizar Souayah, MD (neurology) (neuromuscular medicine) (electrodiagnostic medicine): on 11/11/19." See AR 558

48. Dr. Richardson notes the changing depressive moods while altering the medication prescribed to the Plan Beneficiary by Dr. Lopez. See AR 559-560

49. Dr. Richardson notes "documentation provided for review lacks objective evidence to support these symptoms are of a level of severity that would limit functioning, such as active suicidality or homicidally, suicide attempts, psychosis, or psychiatric hospitalizations." See AR 561

50. Dr. Richardson attempted contact with Dr. Lopez once on January 21, 2020 via phone. See AR 580-581

51. Dr. Richardson was advised that Dr. Lopez was restricted on time and could not speak verbally, so his questions can be faxed. See AR 580-581

52. Dr. Richardson states that no response to his fax was received as of 01/22/20. See AR 581

53. There are no notes that suggest Dr. Richardson followed up with trying to contact Dr. Lopez either via phone or via fax. See AR 580-581

54. On February 6, 2020, a final denial letter was sent to the Plan Beneficiary. The denial of long term disability benefits was upheld. See AR 570-572

55. As noted in the denial letter from February 6, 2020, no new additional information was reviewed prior to rendering a second denial of benefits. See AR 571-572

56. Subsequent to the second denial letter, the Plan Beneficiary sought legal counsel. See AR 575.

57. As of the date of the filing of the complaint, the Plan Beneficiary remains unable to return to work. See ¶20, Comp.

**Dr. Lopez Medical Treatment History Statement of Facts**

58. The Plan Beneficiary was treated by neurologist, Dr. Javier Lopez for several months, beginning in February 2019, prior to September 2019 when she sought long term disability benefits. *See* AR 119-121, 203, 216-217.

59. Dr. Lopez submitted various Behavioral Health Questionnaires (hereinafter "BHC") to the Insurance Company for Plaintiff's Long Term Disability Claim. AR 203; AR 118-121; AR 194; AR 196-198; AR 212-214, 216, 217; AR 186-187.

60. The BHC's provided to the Insurance Company by Dr. Lopez document her Illness, with Depression/Anxiety as primary diagnosis, and state the details related to Plaintiff's disability and inability to work, as follows:

> **5/23/2019**: the primary diagnosis is Depression/Migraines with date of illness beginning on May 13, 2019. Dr. Lopez stated she could not return to work due to "a lot of anxiety and panic. She has no energy. She has "aura" manifeted by visual changes. The specific work restrictions placed on the Plan Beneficiary were solely attributed to emotional state. Dr. Lopez stated "Patient cannot work under stress due to her emotional state" because "Patient is currently undergoing treatment for depression. She should remain away from

work related stress. AR 203.

**6/18/2019**: the primary diagnosis is Anxiety Disorder and Major Depression. Symptoms impacting functionality were listed as low energy, anxiety, panic, visual changes, arm numbness, tingling, facial numbness, lock jaw. No cognitive impairmetn noted, mood was severely depressed and thought process was coherent and logical although content was pathological and preoccupied. Patient has severe depression, anhedonia and total withdrawal from social interaction. Cannot get out of bed due to severe depression and cannot currently perfrom any requirements of her job. Severe depression impairs her ability to function in all settings, inlcuding the home. Severe loss of energy and drive to the point of being unable to rise from bed. AR 118-21.

**7/16/2019**: the primary diagnosis is Anxiety Disorder and Major Depression. Symptoms impacting functionality were listed as low energy, anxiety, panic, visual changes, arm numbness, tingling, facial numbness, lock jaw. No cognitive impairment noted, mood was severely depressed and thought process was coherent and logical although content was pathological and preoccupied. Patient has severe depression, anhedonia and total withdrawal from social interaction. Cannot get out of bed due to severe depression and cannot currently perfrom any requirements of her job. Severe depression impairs her ability to function in all settings, inlcuding the home. Severe loss of energy and drive to the point of being unable to rise from bed. AR 196-198.

**8/9/2019**: the primary diagnosis is Depression and anxiety. Secondary diagnoses, migraine disorder and severe psychosocial stressors. Unable to work in any setting due to the depths of her symptoms. The return to work date was listed as January 6, 2020. Symptoms impacting functionality were listed as low energy, anxiety, panic, visual changes, arm numbness, tingling, facial numbness, lock jaw. No cognitive impairment noted, mood was severely depressed and thought process was coherent and logical although content was pathological and preoccupied. Patient has severe psychomotor depression, anhedonia and total withdrawal from social interaction. Deep depression and anxiety, severe anhedonia, social withdrawal, severe loss of energy and drive, frequent intense headaches. AR 212, 214, 216-217.

**9/11/2019**: the primary diagnosis is Depression and anxiety. Unable to work in any setting due to the depths of her symptoms. The return to work date was listed as January 6, 2020. Symptoms impacting functionality were listed as deep depression, anxiety, severe anhedonia, social withdrawal, severe loss of energy and drive, frequent intense headaches. Patient has severe psychomotor depression, anhedonia and total withdrawal from social interaction. AR 186-187, 189.

61. Dr. Lopez submitted Medical Records to the Insurance Company for Plaintiff's Long Term Disability Claim. AR 206-208; AR134-136; AR 199-201; AR 412-414; AR 426-428.

The medical records evidence Plaintiff's ongoing disability due to depression, as follows:

**5/13/2019**: notes state she is not doing well, in the midst of a deep depression and seeing a psychologist. Completely devoid of energy and could not get out of bed. Anxiety and panic when she sees the room she works in. Assessments indicate migraine with aura; hypercoalgulable state; history of DVT; sleep paralysis; and depression. AR 206-208.

**6/10/2019**: Reason for appointment, anxiety, depression, headaches. Minimal improvement in depressive symptoms. No migraines during the month. Assessments indicate migraine with aura; hypercoalgulable state; history of DVT; sleep paralysis; depression; anxiety and drug side effects. Dr. Lopez notes "in my professional opinion, she is not currently fit to work due to severe anxiety and depression. She is temporarily disabled as a result of these conditions. Time away from work is needed, and is medically indicated and necessary as part of her recovery plan. Recurring migraine headache. AR 134-136.

**7/12/2019**: Patient feels better. Some improvement with anxiety and mood. Still feels down and reports very little energy and desire to do things. Headaches better. Mildly depressed. Assessments indicate migraine with aura; hypercoalgulable state; history of DVT; sleep paralysis; depression; anxiety and drug side effects. Dr. Lopez notes "in my professional opinion, she is still not currently fit to work due to severe anxiety and depression. She is temporarily disabled as a result of these conditions. Time away from work is needed, and is medically indicated and necessary as part of her recovery plan. Despite some improvement, I do not think that she is yet ready to return at this time and do recommend staying out at least 3 additional months. Recurring migraine headache. AR 199-201.

**8/8/2019**: Mood is better. Depression has improved overall. Some improvement to level of anxiety. Little energy and desire to do things she enjoyed. Headaches better. Mildly depressed. Assessments indicate migraine with aura; hypercoalgulable state; history of DVT; sleep paralysis; depression (better with current regimen); anxiety and drug side effects. Dr. Lopez notes "in my professional opinion, she is still not currently fit to work due to severe anxiety and depression. She is temporarily disabled as a result of these conditions. Time away from work is needed, and is medically indicated and necessary as part of her recovery plan. Despite some improvement, I do not think that she is yet ready to return at this time and do recommend staying out at least 3 additional months. Recurring migraine headache. AR 412-414.

**9/6/2019**: headaches are generally better. Exacerbation of depression after her efforts to refinance her home failed due to her employment situation. Assessments indicate migraine with aura; hypercoalgulable state; history of DVT; sleep paralysis; depression (better with current regimen); anxiety and drug side effects; upper respiratoy infection. Dr. Lopez notes "in my professional opinion, she is still not currently fit to work due to severe anxiety and depression. She is temporarily disabled as a result of these conditions. Time away from work is needed, and is medically indicated and necessary as part of her recovery plan. Despite some improvement, I do not think that she is yet ready to return at this time and do recommend staying out at least 3 additional months. Recurring migraine headache. AR 442-444.

## II. Conclusions of Law

1. The Employee Retirement Income Security Act of 1974 applies to the instant action ("ERISA"). Generally, "a denial of benefits challenged under § 502(a) (1) (B) of ERISA is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone & Tire Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57, 103 L. Ed. 2d 80 (1989) (emphasis added). If discretion is given in the Plan to either determine eligibility or construe its terms, the standard of review is under an "abuse of discretion." *Id*. To determine whether the ERISA plan grants to the administrator discretionary authority, the court looks to the relevant group policy and the summary plan description, "which together make up the ERISA plan, for purposes of 29 U.S.C. § 1102(a)(1)." *Shaw v. Conn. Gen. Life Ins. Co*. 353 F.3d 1276 (11th Cir. 2003).

2. ERISA does not promulgate standards under which district courts must review denied benefits. *Bruch*, 489 U.S. at 109. To fill this void, the Supreme Court articulated a framework for judicial review, which the Eleventh Circuit developed into a six-part test. *Melech v. Life Ins. Co. of N. Am*., 739 F.3d 663, 672 (11th Cir. 2014).

   (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong"[2] (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision;

   (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end the inquiry and reverse the decision;

   (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard);

---

[2] 'Wrong' is the label used to describe the conclusion a court reaches when, after reviewing the plan documents and disputed terms *de novo*, the court disagrees with the claims administrator's plan interpretation. *Tippitt v. Reliance Standard Life Ins. Co*., 457 F.3d 1227 (11th Cir. 2006).

> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest;
>
> (5) If there is no conflict, then end the inquiry and affirm the decision;
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011); *See also O.D. v. Jones Lang Lasalle Medical PPO Plus Plan*, 772 Fed. Appx. 800, 803-804 (11th Cir. 2019).

3.   A conflict of interest may exist where the administrator determines eligibility for benefits and also pays claims out of its own assets. *German v. Metro. Life Ins. Co.*, 2016 WL 5661628, *5 (S.D. Fla. Sept. 30, 2016). The conflict of interest is one of many factors to take into account when determining whether the denial of benefits was reasonable at step three. *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195-1196 (11th Cir. 2010).

4.   ERISA does not provide any standard for reviewing the decisions of plan administrators or fiduciaries. *See Meadows v. Am. Airlines, Inc.*, 2011 WL 1102774 (S.D. Fla. Mar. 24, 2011). However, in *Firestone*, the Supreme Court established three different standards for reviewing an ERISA plan administrators decision: 1) de novo review where the plan does not grant the administrator discretion, 2) arbitrary and capricious where the plan grants the administrator discretion, and 3) heightened arbitrary and capricious where the plan grants the administrator discretion and the administrator has a conflict of interest. *Bruch*, 489 U.S. at 115; *See also Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189 (11th Cir. 2010).

5.   The Court determines the Insurance Company's decision is *de novo* wrong. The Insurance Company was vested with discretion to make a determination on Plaintiff's Long Term Disability Claim, as such, the Court continues the Blankenship analaysis to steps two and three.

6. The next step in the ERISA analysis, if the Court determines that the Insurance Company made a 'wrong' decision is to determine if the Insurance Company had discretionary authority. *Metro. Life Ins. Co.*, 644 F.3d at 1355. Here the Insurance Company had discretionary authority. As a result, the next step is to determine is the Insurance Company's decision was reasonable. *Metro. Life Ins. Co.*, 644 F.3d at 1355.

7. The Insurance Company did not adhere to ERISA standards because it failed to make a reasonable determination based on a diligent and adequate investigation as required under its fiduciary duties. *Aetna Life Ins. Co.*, 592 F.3d at 1200. The Insurance Company failed to evaluate the Beneficiary's claim impartially and reasonably because (i) it failed to consider all evidence and cherry picked the facts in the administrative record that are beneficial to it and failed to provide a complete picture of the Beneficiary's actual health condition (ii) and adopted opinions of its reviewing physicians when the opinions were not congruent with the terms of the Plan.

8. Under ERISA, a fiduciary has the "responsibility to fully investigate" claims before denying benefits. *Capone*, 592 F.3d 1189, 1200 (11th Cir. 2010); *See also Prelutsky v. Greater Georgia Life Ins. Co.*, 2017 WL 2406730, at *5 (11th Cir. 2017) (discussing *Capone* and noting that Aetna's investigation was deemed unreasonable because **it made no attempt to interview witnesses who may have had information contradictory to the company's theory of the facts**)(emphasis added). The *Capone* Court explained that 29 U.S.C. § 1104(a)(1) mandates that a fiduciary shall "discharge his duties with respect to a plan **solely in the interest of the participants and beneficiaries** and…with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use…" *Id*. at 1199-1200(emphasis added). As a result, Aetna, as a fiduciary, had the responsibility to fully investigate *Capone*'s claims before denying benefits. *Id*. at 1200. An ERISA fiduciary is required

to make

> "an honest effort to ascertain the facts upon which its exercise must rest and an honest determination from such ascertained facts. . . If [the fiduciary] knew of matters concerning which honestly would require investigation, and failed to act, or if it knew of matters which would honestly compel a given determination and it announced to the contrary, it cannot, in law be regarded as having exercised good faith, and its action would be arbitrary. Thus, an improper motive sufficient to set aside a fiduciary's decision may be inferred from the fiduciary's failure to investigate or to interpret honestly evidence that greatly preponderates in one direction."

*Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1566 n.11 (11th Cir. 1990). *See also, Brock v. Walton*, 794 F.2d 586 (11th Cir. 1986) (A fiduciary's duty to investigate is a key facet of prudence and is often at the heart of fiduciary litigation); See also *Glenn*, 554 U.S. at 115 (to accurately process claims plan fiduciaries must provide a "full and fair review" of all denied claims); *See also Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807 (10th Cir. 2004) (ERISA fiduciaries "cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement").

9. The Insurance Company failed to address the initial basis (i.e. mental illness, AR. 230) of Plaintiff's claim and continually states that the Beneficiary was not functionally limited and makes reference to varying symptoms of improvement without any further analysis or determination as to the level of improvement. The Insurance Company emphasizes that the Plaintiff's symptoms were not severe enough, however, nowhere in the Plan does a disability have to be "severe" to warrant benefits. All the medical records submitted by the Plaintiff indicate the worsening of her condition and no significant progress. SMR1, ¶¶60, 61; AR 203; AR 118-121; AR 194; AR 196-198; AR 212-214, 216, 217; AR 186-187. AR 206-208; AR134-136; AR 199-201; AR 412-414; AR 426-428. The Insurance Company uses only certain statements to support its position. This is arbitrary and capricious. *Reliance Standard Life Ins. Co.*, 799 Fed. App'x 753.

10. In addition, in her initial claim reporting paperwork, the Plaintiff provided the names of treating physicians for her conditions along with contact information for each one. A Michelle Gonales, Phone 305-445-0477 is listed along with Javier Lopez Phone 305-665-6501. AR 062-064. Nowhere in the record does it state that the Insurance Company ever made an effort to investigate or obtain information from Michelle Gonales, Phone 305-445-0477.[3] In *Capone*, the court found fault with the insurance company's failure to interview witnesses who had direct knowledge of facts relevant to the case before denying the plaintiff's claim for benefits. *Capone*, 592 F.3d 1189, 1200. Here, the Insurance Company made the same mistake. It never contacted Michelle Gonales, Phone 305-445-0477 for more information and also failed to conduct a peer to peer review with Dr. Lopez. SMR1, ¶39,50.

11. The Insurance Company cited all of the hired doctors' specific arguments as justification for denying the Plaintiff's benefits, when the Plan does not contain provisions that support them. AR435-437; AR445-449; AR 558-561; AR 550-552; AR 554-556. The Insurance Company failed to credit the Plaintiff's reliable evidence of disability and mental illness as described in her medical records and questionnaires. AR 203; AR 118-121; AR 194; AR 196-198; AR 212-214, 216, 217; AR 186-187. AR 206-208; AR134-136; AR 199-201; AR 412-414; AR 426-428. Plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 1972, 155 L.Ed.2d 1034 (2003). Here, the Plan beneficiary submitted all the evidence available to her, including contact infromation to her psychologist. The Insurance Company, as the Plan Administrator, was obligated to consider all evidence and apply that evidence in accordance with the terms of the Plan. However, it did not do so and instead copied

---

[3] A simple google search of the phone number 305-445-0477 indicates that this is the office of psychologist, Coral Gables Counseling. This information was available to the Insurance Company during the time the claim was reviewed.

and pasted the opinions of the doctors it hired without making a proper determination in accordance with the Plan's defintion of disability. Based on the foregoing, the decision to deny long term disability benefits to the Plan Beneficiary was wrong and unreasonable and should be overturned as this decision was arbitrary and capricious.

12. District courts sit more as appellate tribunals than a trial court. *See Curran v Kemper Nat. Servs., Inc.*, 133 F. App'x 740 (11th Circ. 2005). Therefore, the court reviews administrative decisions to terminate the benefits in light of the evidence before it at the time of the decision. *Id*. The standard to which a review of a decision is made, is an abuse of discretion when "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In *Holland*, the court allowed the reviewing court to decide on a case-by-case basis whether under the particular facts whether the plan administrator abused its discretion by not obtaining the opinion of the vocational rehabilitation expert. *See Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 250 (5th Cir. 2009) (citing *Duhon v. Texaco, Inc.*, 15 F.3d 1302 (5th Cir. 1994). A decision must be supported by substantial evidence in order to be sustained. *See Buzzard v. Hollans*, 367 F.3d 263 (4th Cir. 2004). Substantial evidence has been noted to be evidence that a reasonable mind might accept as adequate to support the determination made, and it requires more than a scintilla but less than a preponderance of the evidence. *See Celardo v. Gny Auto. Dealers Health and Welfare Trust*, 318 F.3d 142 (2d Cir. 2003) (citing *Miller v. United Welfare Fund*, 72 F.3d 1066 (2d Cir. 1995). If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then it is necessary to determine whether "reasonable" grounds supported it under a deferential arbitrary and capricious standard. *Metro. Life Ins. Co.*, 644 F.3d at 1355. The Insurance Company abused its discretion because it

failed to consider the Plaintiff's medical records and documentary evidence. It also failed to hire an expert to determine if Plaintiff could perform substantial and material duties as per the Plans terms. As noted above, the Insurance Company took opinions of the physicians it hired and simply repeated the statements in its denial letters. The Insurance Company was not reasonable because it failed to properly interpret the terms of the Plan in violation of ERISA. In addition, they failed to interview key witnesses, Dr. Lopez and Plaintiff's treating psychologist. Under ERISA, a fiduciary has the "responsibility to fully investigate" claims before denying benefits. *Capone*, 592 F.3d at 1200. Because there are no reasonable grounds to deny the Plaintiff's Long Term Disability claim under this scenario, the Court ends the inquiry under *Blankenship* and reverses the Insurance Company's decision. *Metro. Life Ins. Co.*, 644 F.3d at 1355.

13. Although not necessary, the Court analyzes the next step and considers whether there was a conflict of interst. In the instant case, the Insurance Company operated under a conflict of interest. A conflict of interest may exist where the administrator determines eligibility for benefits and also pays claims out of its own assets. *German v. Metro. Life Ins. Co.*, 2016 WL 5661628 (S.D. Fla. Sept. 30, 2016). The Insurance Company both insures the payment and makes the determination of eligibility of benefits under the policy. The Insurance Company's conflict lead to an arbitrary and capricious decision.

14. Conflict of interest is one of the factors considered for the denial of benefits provided by the Plan which led to the arbitrary and capricious decision. The 11th Circuit has determined that the court should review whether or not a conflict of interest tainted the administrator's benefit decision on a case by case basis under an abuse of discretion standard. *See Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350 (11th Cir. 2011). In order to determine whether or not a plan administrator has abused its discretion, a court may consider: a) the scope of the

discretion conferred; b) the purpose of the plan provision in which the discretion is granted; c) any external standard relevant to the exercise of that discretion; d) the administrators motives; e) any conflict of interest under which the administrator operates in making its decision. *See Haley v Paul Revere Life Ins. Co.*, 77 F.3d 84, 89 (4th Cir. 1996).

15. In analyzing any conflict of interest, the Supreme Court has recognized that where a plan fiduciary exercising its discretion operates under a conflict of interest, the conflict is an important factor in determining whether the discretion has been abused. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). While there is no one size fits all approach to a conflict analysis, the courts consider the "significance of this factor will depend upon the circumstances of the particular case." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). It is abundantly clear that most courts have found that the insurance company acting as both as plan administrator and insurer is inherently self-interested. *Id. See also Lee v. Blue Cross/Blue Shield of Alabama*, 10 F.3d 1547 (11th Cir. 1994).

16. The plan administrator, in making a decision regarding benefits for Plaintiff also making a decision for the insurance company, who is both tasked with making payments for the benefits and determining whether or not an insured is covered by the policy. Therefore, a conflict of interest exists and is a factor to consider to make a determinatino that the Insurance company was arbitrary and capricious in denying long term care benefits to the Plaintiff.

17. In sum, the Insurance Company, acting under a conflict of interest, abused its discretion in denying the Plan Beneficiary's long term disability benefits.

18. Plaintiff has shown a degree of success on the merits and is entitled to an award of reasonable attorneys' fees under §1132(g)(1). *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983).

Dated this 7th day of September 2021.

                    Respectfully submitted,

**Your Insurance Attorney, PLLC**
Health and Medicine Law Firm Division
*Counsel for Plaintiff*
2601 S. Bayshore Drive, 18th Floor
Miami, FL 33133
Ph: 305-444-5969
Service email:
health@yourinsuranceattorney.com
Attorney email:
msanti@yourinsuranceattorney.com
eirazabal@yourinsuranceattorney.com
xb@yourinsuranceattorney.com

By: **/s/ Maria T. Santi**
     MARIA T. SANTI, ESQUIRE
     Florida Bar No.: 117564

## CERTIFICATE OF SERVICE

I HEREBYCERTIFY that on September 7, 2021, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will electronically provide service to all counsel of record.

**Service List**

Shari Gerson, Esq.
Florida Bar No. 17035
Shari.gerson@gray-robinson.com
GRAYROBINSON, P.A.
401 East Last Olas Boulevard
Suite 1000
Fort Lauderdale, Florida 33301
Telephone: 954-761-8111
Facsimile: 954-761-8112
*Counsel for Defendant Life Insurance Company of North America, d/b/a Cigna*

Kelly J.H. Garcia, Esq.
Florida Bar No. 0694851
Kelly.garcia@gray-robinson.com
GRAYROBINSON, P.A.
301 e. Pine Street
Suite 1400
Orlando, Florida 32802
Telephone: 407-843-8880
Facsimile: 407-244-5690
*Counsel for Defendant Life Insurance Company of North America, d/b/a Cigna*