**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-25259-CIV-ALTONAGA/Torres**

**EUNICE LOPEZ**,

    Plaintiff,

v.

**LIFE INSURANCE COMPANY OF
NORTH AMERICA**,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** is before the Court on Defendant, Life Insurance Company of North America's Motion for Summary Judgment [ECF No. 18], filed on June 14, 2021. Plaintiff, Eunice Lopez, filed a Response in Opposition to Defendant's Motion [ECF No. 22], to which Defendant filed a Reply [ECF No. 26]. The Court has carefully considered the parties' written submissions,[1] the record, and applicable law. For the following reasons, the Motion is granted.

**I.    BACKGROUND**[2]

This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiff was employed by Brown & Brown, Inc. as a Personal Account

---

[1] The parties' factual submissions include: Defendant's Statement of Material Facts ("Def.'s SOF") [ECF No. 19]; Plaintiff's [Response] Statement of Material Facts ("Pl.'s Resp. SOF") [ECF No. 23]; and Defendant's Reply to Plaintiff's Statement of Material Facts ("Def.'s Reply SOF") [ECF No. 27].

[2] Unless otherwise noted, the facts are undisputed. References to the Administrative Record [ECF No. 19-1] are designated with the letter "A" followed by the stamped page number that appears on the bottom right corner of each page. References to the Long-Term Disability Plan [ECF No. 19-2] are designated with the phrase "LTD Plan" followed by the stamped page number that appears on the bottom right corner of each page. For references to the parties' written submissions, the Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Manager, responsible for account management and sales of personal lines insurance products; her job was sedentary in nature. (*See* Def.'s SOF ¶¶ 1, 8).[3] She was hired on August 3, 2015. (*See* Pl.'s Resp. SOF ¶ 1; A 457). Plaintiff was a Class 2 participant in a long-term disability ("LTD") employee welfare benefits plan (the "Plan") sponsored and administered by Brown & Brown. (*See* Def.'s SOF ¶¶ 1–2). The Plan was insured through a group insurance policy, LK-980281, issued to Brown & Brown by Defendant. (*See id.* ¶ 2; Pl.'s Resp. SOF ¶ 2). Defendant served as the claims administrator and Claim Fiduciary for the Plan. (*See* Def.'s SOF ¶¶ 4–5; LTD Plan 035, 116).

***The LTD Plan***. The Plan states that Defendant "shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact." (LTD Plan 035; *see also id.* 116).

Under the Plan, LTD benefits are payable monthly to a covered employee who becomes and remains continuously disabled throughout the 90-day elimination period and beyond. (*See id.* 059, 091). The Plan defines disability as follows:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is either:
>
> 1. unable to perform any or all of the material and substantial duties of his or her Regular Occupation; or

---

[3] Under Local Rule 56.1(a)(2), "[a]n opponent's Statement of Material Facts shall clearly challenge any purportedly material fact asserted by the movant that the opponent contends is genuinely in dispute." *Id.* (alteration added). Because Plaintiff did not respond to or dispute any of the material facts contained in Defendant's Statement of Material Facts, as required by Local Rule 56.1, those facts are deemed undisputed. *See* Local Rule 56.1(c) ("All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply."); *Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293, 1305 (S.D. Fla. 2010) ("[I]n accordance with Local Rule [56.1], where a party has failed to direct the Court to evidentiary support in the record for any proposed contravening material fact, the Court deems the corresponding proposed uncontroverted material fact admitted for purposes of the [motion] for [s]ummary [j]udgment, provided that the Court finds the statement of material fact at issue to be supported by the evidence." (alterations added; footnote call number omitted)), *aff'd*, 477 F. App'x 702 (11th Cir. 2012).

>    2. unable to earn 80% or more of your Indexed Earnings from working in his or her Regular Occupation.

> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is either:
>
>    1. unable to perform any or all of the material and substantial duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; or
>
>    2. unable to earn 80% or more of his or her Indexed Earnings.

(*Id.* 052).

The Plan defines sickness as "[a]ny physical or mental illness." (*Id.* 071 (alteration added)). The Plan limits disability benefits to 24 monthly payments for "a Disability caused by, or contributed to by, any one or more of the following conditions": anxiety disorders; delusional (paranoid) disorders; depressive disorders; eating disorders; mental illness; or somatoform disorders (psychosomatic illness). (*Id.* 062).

In addition to satisfying the 90-day elimination period, the Plan also requires claimants to "be under the Appropriate Care of a Physician" and provide "satisfactory proof of Disability before benefits will be paid." (*Id.* 059). "Appropriate Care" means the claimant:

>    1. Has received treatment, care and advice from a Physician who is qualified and experienced in the diagnosis and treatment of the conditions causing Disability. If the condition is of a nature or severity that it is customarily treated by a recognized medical specialty, the Physician is a practitioner in that specialty.
>
>    2. Continues to receive such treatment, care or advice as often as is required for treatment of the conditions causing Disability.
>
>    3. Adheres to the treatment plan prescribed by the Physician, including the taking of medications.

(*Id.* 070).

***Plaintiff's Claim***. On May 14, 2019, Plaintiff stopped working due to anxiety and

depression. (*See* Def.'s SOF ¶ 6; Pl.'s Resp. SOF ¶ 5; Def.'s Reply SOF ¶ 5). On that date, Plaintiff initiated a claim for short-term disability ("STD") benefits, identifying Drs. Michelle Gonales and Javier Lopez as her treatment providers, and submitted authorization for Defendant to obtain her medical records. (*See* Pl.'s Resp. SOF ¶¶ 5–6; Def.'s Reply SOF ¶¶ 5–6). Plaintiff received STD benefits from May 29, 2019 through August 12, 2019. (*See* Def.'s SOF ¶ 9; Pl.'s Resp. SOF ¶ 8).

On August 12, 2019, Plaintiff sought LTD benefits from Defendant. (*See* Def.'s SOF ¶ 11; Pl.'s Resp. SOF ¶ 12). In support of her LTD claim, Plaintiff submitted treatment records from five office visits with her neurologist, Dr. Javier Lopez, dated May 13, 2019; June 10, 2019; July 12, 2019; August 8, 2019; and September 6, 2019. (*See* Def.'s SOF ¶ 15; Pl.'s Resp. SOF ¶ 61). Dr. Lopez also completed Behavioral Health Questionnaires and Medical Request Forms on May 23, 2019; June 18, 2019; July 16, 2019; August 8, 2019; and September 11, 2019. (*See* Def.'s SOF ¶ 16; Pl.'s Resp. SOF ¶¶ 59–60).

Dr. Lopez's notes from May 13, 2019 state Plaintiff "is in th[e] midst of a deep depression" and experiences "a lot of anxiety and 'panic' when she even see[s] the room that she works in." (A 206 (alterations added)). He wrote, Plaintiff "is seeing a psychologist but has not seen a psychiatrist." (*Id.*). Dr. Lopez also noted the medication Aimovig was helping to reduce "the intensity but not the frequency of [Plaintiff's] migraines" and that her migraine spells, occurring approximately twice a month, were accompanied by aura. (*Id.* (alteration added)). A Medical Request Form completed by Dr. Lopez on May 23, 2019 indicated Plaintiff "cannot work under stress due to her emotional state" as the reason for his recommended work restrictions. (A 203).

In his office notes from June 10, 2019, Dr. Lopez wrote: "In my professional opinion, [Plaintiff] is not currently fit to work due to severe anxiety and depression." (A 136 (alteration

4

added)). She experienced negative side effects while taking Viibryd for her depression; Dr. Lopez therefore stopped that medication and placed her on escitalopram. (*See id.*). However, "[o]n the positive side of things, she has not had a single migraine this month." (A 134 (alteration added)). In the June 18, 2019 Behavioral Health Questionnaire, Dr. Lopez again noted that Plaintiff was "under the care of a psychologist [but] not a psychiatrist." (A 120 (alteration added)).

At Plaintiff's July 12, 2019 office visit, she reported "some improvement in her level of anxiety as well as her mood[,]" but she still felt "down and report[ed] very little energy and desire to do things. Headaches [we]re substantially better after the addition of Aimovig." (A 199 (alterations added)). Although the escitalopram prescription for depression "caused problems[,]" Plaintiff was having "a better response to [] Trintellix." (*Id.* (alterations added)). Dr. Lopez observed Plaintiff was "mildly depressed" and "anxious" (*id.*), but she was not cognitively impaired (*see* A 196), and her concentration was normal (*see* A 200). Dr. Lopez continued to recommend time away from work (*see* A 201) and indicated that Plaintiff was "currently under the care of a psychologist" (A 198).

On August 8, 2019, Dr. Lopez noted that Plaintiff had "tolerated" Trintellix "so far" and her depression had "improved overall." (A 412). Plaintiff also reported "some improvement in her level of anxiety as well as her mood" and she suffered "[n]o severe migraine spells . . . in the last month." (*Id.* (alterations added)). Dr. Lopez's previous observations that Plaintiff was oriented and her memory, attention span, and concentration were normal remained unchanged. (*See* A 214, 412–13). He also continued to recommend further time away from work (*see* A 212, 414), and again noted Plaintiff was "under the care of a psychologist" (A 216). In the Behavioral Health Questionnaire dated August 8, 2019, Dr. Lopez stated Plaintiff "cannot return to work before [January 6, 2020]." (A 217 (alteration added)).

5

Finally, Dr. Lopez's notes from September 6, 2019 state Plaintiff's headaches "are generally better" and she "[r]ecently had an exacerbation of her depression after her efforts to refinance her home failed due to her employment situation." (A 426 (alteration added)). Plaintiff was "mildly depressed" and "anxious[,]" but her cognitive functioning appeared normal. (*See id.* (alteration added)). Dr. Lopez continued her medication for Trintellix for her depression (*see* A 427), and wrote: "Despite some improvement, I do not think that she is yet ready to return [to work] at this time and do recommend staying out at least 3 additional months." (A 428 (alteration added)). As on previous Behavioral Health Questionnaires, Dr. Lopez noted that Plaintiff was "under the care of a psychologist." (A 187).

Plaintiff did not submit records from any psychologist, psychiatrist, or mental health therapist to Defendant. (*See* Def.'s SOF ¶ 18; A 500 (identifying only Dr. Lopez as a treating physician); A 671, 684 (Plaintiff confirming to Defendant there were no other providers to obtain information from)). In the Disability Questionnaire dated September 20, 2019, Plaintiff reported her regular activities as cooking, cleaning, laundry, reading, and watching TV. (*See* A 502). She reported doing regular cardio exercise at home and stated her hobbies were reading, writing, and drawing. (*See id.*). She identified Dr. Lopez as her only treating physician. (*See* A 500). When asked to describe the reason she was not working, Plaintiff responded: "My profession as an insurance agent in Florida is extremely stressful[,] and the current office environment exacerbates the mental stress and worsens my depression and anxiety." (A 501 (alteration added)).

In conducting its review of Plaintiff's claim for LTD benefits, Defendant obtained physician reviews by a board-certified psychiatrist, Dr. Aneta Predanic, and a board-certified neurologist, Dr. Nizar Souayah. (*See* Def.'s SOF ¶ 24; Pl.'s Resp. SOF ¶¶ 21, 28). Both reviewed Dr. Lopez's office visit notes, Medical Request Forms, and Behavioral Health Questionnaires.

(*See* A 435, 445).

Following her medical review, Dr. Predanic identified no psychiatric conditions which "may independently or collectively impact [Plaintiff]'s functionality" or warrant any "associated limitations and restrictions[.]" (A 436 (alterations added)). Dr. Predanic concluded Dr. Lopez's opinion was "not well supported by medically acceptable clinical diagnostic techniques including mental status examinations, psychological and/or neuropsychological testing and is inconsistent with the other substantial evidence in the claim file[.]" (*Id.* (alteration added)). Specifically, Dr. Predanic noted that contrary to Dr. Lopez's conclusion Plaintiff "was in the midst of the worst depressive episode in her life" and experiencing "lots of anxiety," the same office visit note from May 13, 2019 stated Plaintiff had "no depressive symptoms; no anxiety noted, [and she] sleeps well[.]" (*Id.* (alterations added; quotation marks omitted); *see also* A 206). Moreover, although Plaintiff experienced negative side effects while on her first two antidepressants, she reported improvements of both her depressive and anxiety symptoms on the third antidepressant, Trintellix. (*See* A 436).

> In addition,
>
> Despite documenting severe depression and anxiety symptoms, even as of [May 13, 2019] and throughout the records, [Plaintiff's mental status exams] are essentially completely normal, indicating [Plaintiff] presents as well appearing, well groomed, with normal speech, awake and alert, fully oriented, with recent/remote memory and attention span/concentration normal. There is denial of suicidal and homicidal thinking, no psychotic symptoms. [Behavioral Health Questionnaires] document depressed mood and anxious affect, with "preoccupied/pathological" thought content, although this is not clarified/described. These limited [mental status exam] abnormalities are inconsistent with presentation of a severe psychiatric condition[.]"

(*Id.* (alterations added)). Dr. Predanic also observed the inconsistency between the improvements documented in Dr. Lopez's office visit notes and the notations in the Behavioral Health Questionnaires and Medical Request Forms, indicating Plaintiff continued to suffer "severe

7

psychomotor depression" and was "unable to function in any setting due to the depth of her symptoms[.]" (A 437 (alteration added; quotation marks omitted)).

The answers given in Plaintiff's September 20, 2019 Disability Questionnaire further corroborated Dr. Predanic's conclusion that Plaintiff had no functional impairments. (*See id.*). Finally, she noted there were no records from a treating psychologist and no referrals to a psychiatrist. (*See id.*). Dr. Predanic stated the "[m]onthly follow-up[s] by Dr. Lopez and lack of aggressive psychotropic meds management are indicators of low severity of treatment, which would not be expected to be adequate, if [Plaintiff]'s psychiatric condition was severe and work precluding[.]" (*Id.* (alterations added)). Accordingly, based on her review of the medical records, Dr. Predanic determined Plaintiff was not functionally limited and "[n]o restrictions are medically necessary due to [her] psychiatric condition[.]" (*Id.* (alterations added)).

Similarly, Dr. Souayah concluded the medical records did not support the no-work restriction recommended by Dr. Lopez. (*See* A 445). In Dr. Souayah's "professional opinion and from a neurological standpoint, there [wa]s no evidence [Plaintiff] is functionally limited." (A 448 (alterations added)). According to the medical records, Plaintiff's migraine condition was "stable" and "responding to headache medications." (*Id.*). Dr. Souayah therefore concluded "[n]o work restrictions are supported." (*Id.* (alteration added)).

By letter dated November 14, 2019, Defendant denied Plaintiff's claim for LTD benefits. (*See* A 521–25, 538–42). The letter explained Plaintiff's claim was reviewed by a Claim Manager, Senior Claim Manager, Behavioral Health Specialist, Nurse Case Manager, a Medical Director specializing in Neurology (Dr. Souayah), and a Medical Director specializing in Behavioral Health (Dr. Predanic). (*See* A 539). The letter explained Defendant had reviewed all of Dr. Lopez's

8

office visit notes from May 13, 2019 through September 6, 2019,[4] Medical Request Forms, and Behavioral Health Questionnaires as well as two physician reviews. (*See* A 539–41). Given Plaintiff's "low severity of treatment, which would not be expected to be adequate to support a claim of a psychiatric impairment [that] would preclude one from working" (A 540 (alteration added)), Defendant concluded Plaintiff was "not functionally limited due to a psychiatric or functional impairment and no restrictions are medically necessary that would preclude [her] from working" (A 541 (alteration added)).

*Plaintiff's Appeal*. Plaintiff appealed Defendant's denial of her LTD benefits claim on November 19, 2019. (*See* A 519). On December 5, 2019 and again on February 6, 2020, Defendant sent Plaintiff requests to submit any additional medical records available to support her claim. (*See* Def.'s SOF ¶ 29; A 531–32, 570). Plaintiff did not submit any new records during the appeal process. (*See* Def.'s SOF ¶ 30; A 565).

To assist Defendant's evaluation of the appeal, Drs. David Burke, Elbert Greer Richardson, and Roger Belcourt each conducted a review of Plaintiff's medical records. (*See* Def.'s SOF ¶ 31; Pl.'s Resp. SOF ¶¶ 34, 40, 45). Dr. Burke, a board-certified neurologist, determined Plaintiff's migraines did not warrant any medically necessary work restrictions. (*See* A 551). In support of this determination, he noted Plaintiff's migraines had generally improved; at every examination with Dr. Lopez, muscle strength, sensation, and coordination were intact; and although the records indicated migraines with aura, there was no documentation of frequent hospital or emergency room

---

[4] Defendant also acknowledged an October 11, 2019 office visit, explaining it did not continue outreach to Dr. Lopez about the October appointment because it was only evaluating the medical information "from your incur date through approximately 1 month beyond your benefit start date" of August 12, 2019. (A 540). In other words, the October office visit was outside the "relevant time period for review." (*Id.*). In any event, Defendant noted, its Nurse Case Manager spoke to Dr. Lopez's office in November 2019 and learned there were no "significant changes to [Plaintiff's] condition between the last office visit on file and recent call with [Dr. Lopez's] office." (*Id.* (alterations added)).

visits "for symptomatic management, headache diary, or further severity indicators." (*Id.*). Dr. Burke twice tried to contact Dr. Lopez for a peer-to peer discussion — on January 12 and 14, 2020 — but received no response. (*See* A 566; *see also* A 552).

Dr. Richardson, a board-certified psychiatrist, also found "[n]o restrictions are required from the perspective of psychiatry" (A 580 (alteration added)), and commented that Dr. Lopez's opinion otherwise was "not well supported by medically acceptable clinical or laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the claim file[.]" (A 577 (alteration added)). In particular, Plaintiff's mental status exam findings were within normal limits and her neurological exam indicated no cognitive impairments. (*See* A 580). Dr. Richardson explained that the medical records "lack[ed] objective evidence to support [a finding that Plaintiff's] symptoms are of a level of severity that would limit functioning[.]" (*Id.* (alterations added)). Like Dr. Burke, Dr. Richardson also attempted a peer discussion with Dr. Lopez without success. On January 21, 2020, Dr. Richardson called Dr. Lopez's office and was advised to send any questions he had for Dr. Lopez via facsimile. (*See* A 566, 580–81). He did so on January 22, 2020, but he did not receive a response prior to Defendant's March 5, 2020 appeal determination. (*See* Def.'s SOF ¶ 35; A 566).

Dr. Belcourt, a physician board-certified in occupational medicine, concurred with the other physicians' conclusions. His review of the medical records paid particular attention to Plaintiff's non-neurological and non-psychiatric conditions — namely, PCOS, uterine fibroids, hypercoagulable state, and sleep paralysis. (*See* A 554). Dr. Belcourt determined "[t]here is no documentation of objective functional deficits for which restrictions would be indicated as a result of these conditions" and Plaintiff "does not require any medically necessary work activity restrictions." (A 555 (alteration added)).

On February 6, 2020, Defendant sent Plaintiff a letter detailing the medical reviews of Drs. Burke, Richardson, and Belcourt; advising her of Defendant's intention to uphold the initial claims decision; and inviting her to submit a response by March 5, 2020. (*See* Def.'s SOF ¶ 37; Def.'s Reply SOF ¶ 20; A 570–72). Plaintiff did not submit a response. (*See* Def.'s SOF ¶ 38; A 565). Based on its review of the medical records and the reviewers' opinions, Defendant upheld its decision to deny Plaintiff's claim for LTD benefits. Defendant informed Plaintiff of its decision by letter dated March 5, 2020. (*See* A 564–68).

***Judicial Review***. In accordance with ERISA's judicial review provision, Plaintiff seeks to overturn Defendant's decision to deny her LTD benefits. (*See generally* Compl.). In addition to damages, Plaintiff seeks attorney's fees and costs. (*See id.* ¶¶ 33–34).

## II.   STANDARD OF REVIEW

In an ERISA benefits denial case, "the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Curran v. Kemper Nat'l Servs., Inc.*, No. 04-14097, 2005 WL 894840, at *7 (11th Cir. Mar. 16, 2005) (per curiam) (quotation marks and citation omitted). The summary judgment standard in ERISA cases is therefore different than the ordinary summary judgment standard that applies in other cases. *See Ruple v. Hartford Life & Accident Ins. Co.*, 340 F. App'x 604, 610 (11th Cir. 2009) (per curiam). "[T]he usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Jones v. Fed. Express Corp.*, 984 F. Supp. 2d 1271, 1275 (M.D. Fla. 2013) (alteration added; quotation marks and citation omitted). "Thus, there may indeed be unresolved factual issues evident in the administrative record, but unless the administrator's decision was wrong, or arbitrary and capricious, these issues will not preclude summary judgment as they

normally would." *Miller v. PNC Fin. Servs. Grp., Inc.*, 278 F. Supp. 3d 1333, 1341 (S.D Fla. 2017) (quotation marks and citation omitted).

ERISA provides no standard for reviewing decisions of claims administrators or plan fiduciaries. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). The Eleventh Circuit has established a six-part test for reviewing a claim administrator's benefits decision:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether [it] was vested with discretion in reviewing claims; if not, end the judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and [it] was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review [its] decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if [it] operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011) (per curiam) (alterations added; citation and footnote call number omitted).

Where, as here, the Plan vests the claims administrator with discretion "to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact" (LTD Plan 035; *see also id.* 116), the district court may assume the benefits decision was *de novo* wrong and begin its analysis at step three. *See Mickell v. Bell/Pete Rozelle NFL Players Ret. Plan*, 832 F. App'x 586, 591 (11th Cir. 2020). Accordingly,

the court must examine whether the administrator's denial of benefits was "arbitrary and capricious." *Wright v. Reliance Standard Life Ins. Co.*, 844 F. App'x 141, 144 (11th Cir. 2021) (per curiam) (quotation marks and citation omitted).

"Review of the [claims] administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." *Blankenship*, 644 F.3d at 1354 (alteration added; citation omitted). The claimant bears the burden of proving she is entitled to ERISA benefits and that the administrator's denial was arbitrary and capricious. *See Wright*, 844 F. App'x at 144 (citation omitted); *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1247 (11th Cir. 2008) (citation omitted).

### III. ANALYSIS

Plaintiff argues that Defendant arbitrarily and capriciously denied her LTD benefits. (*See generally* Compl.; Resp.). In particular, Plaintiff asserts Defendant did not fully investigate her claims before denying benefits, did not sufficiently credit the opinion of her treating physician, cherry-picked information from the medical record to support its decision, and unreasonably adopted the opinions of its reviewing physicians when their opinions were not congruent with the terms of the Plan. (*See generally* Resp.). Defendant maintains its decision was reasonable because Plaintiff failed to submit records of any psychological treatment and Dr. Lopez's records did not support the existence of a disabling mental condition under the terms of the Plan. (*See generally* Mot.; Reply).

Under the arbitrary and capricious standard, the Court must "determine whether there was a reasonable basis for [Defendant's] decision, based upon the facts as known to the administrator at the time the decision was made." *Glazer*, 524 F.3d at 1246 (alteration added; quotation marks and citation omitted). "A reasonable determination is not necessarily the best determination, or

even the result the Court would have reached." *Bloom v. Hartford Life & Accident Ins. Co.*, 917 F. Supp. 2d 1269, 1285 (S.D. Fla. 2013) (quotation marks and citation omitted), *aff'd*, 558 F. App'x 854 (11th Cir. 2014). So long as Defendant's decision "has a reasonable factual basis," the Court must uphold its determination, "even if the record also contains contrary information." *Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1280 (11th Cir. 2005) (citation omitted).

Here, Defendant did not arbitrarily and capriciously deny Plaintiff's LTD claim. Plaintiff asserted the reason she could not work was due to symptoms related to anxiety and depression. (*See* A 522). To show she was entitled to LTD benefits, Plaintiff was required to provide "satisfactory proof" that she was "unable to perform any or all of the material and substantial duties" of her sedentary job as a Personal Account Manager. (LTD Plan 052, 059). In addition, Plaintiff was required to be under the "Appropriate Care" of a physician "who is qualified and experienced in the diagnosis and treatment of the conditions causing Disability." (*Id.* 059, 070). Defendant considered the medical records of Dr. Lopez, the analyses of several medical experts, and the absence of records from a treating psychologist or psychiatrist to conclude that Plaintiff failed to make a sufficient showing of disability under the Plan.

Plaintiff argues Defendant did not fully investigate her claim before denying benefits because it did not seek records from her psychologist, Dr. Michelle Gonales, and did not sufficiently attempt follow-up contact with Dr. Lopez. (*See* Resp. 10–11). Plaintiff's argument is unavailing.

First, although Plaintiff identified Dr. Gonales on her initial STD claim form, she did not identify any treatment provider other than Dr. Lopez on her LTD claim form (*see* Pl.'s Resp. SOF ¶¶ 5–6; Def.'s Reply SOF ¶¶ 5–6), and the record reveals she repeatedly confirmed to Defendant there were no other providers from which to obtain information (*see* A 500, 671, 684).

14

Second, the Plan unambiguously places the burden on Plaintiff to provide "satisfactory proof" of disability. (LTD Plan 059); *see also Bloom*, 917 F. Supp. 2d at 1283 (concluding claims administrator "was not required to obtain objective [medical] evidence" to support the plaintiff's disability claim where the plan placed the burden on the plaintiff and "it was her duty to introduce evidence sufficient to support a finding that she was disabled" (alteration added; citation omitted)), *aff'd*, 558 F. App'x 854; *Diaz v. Verizon Wireless Emp. Benefit Comm.*, No. 8:04-cv-2031, 2006 WL 2470171, at *3 (M.D. Fla. May 4, 2006) ("[The claims administrator] had no obligation to contact [the] [p]laintiff's physicians to request medical documentation as it is [the] [p]laintiff's responsibility to provide . . . all the necessary information to make a determination regarding his disability." (alterations added)), *report and recommendation adopted by* 2006 WL 2471517 (M.D. Fla. Aug. 24, 2006), *aff'd*, 222 F. App'x 879 (11th Cir. 2007). It was therefore Plaintiff's duty to supply records and other medical information from any treating psychologist, such as Dr. Gonales. She did not do so during either the initial review of her claim or on appeal, despite multiple invitations from Defendant to identify additional treatment providers or submit supporting medical documentation. (*See* Def.'s SOF ¶ 18; A 500, 519, 531–32, 539–40, 565, 570–72, 671, 684). Under the terms of the Plan, Defendant plainly had no obligation to ferret out what Plaintiff herself failed to produce.[5]

---

[5] Plaintiff invokes Defendant's fiduciary obligations in support of her contention that Defendant should have *sua sponte* sought out treatment records from Dr. Gonales. (*See* Resp. 9). "Although it is true that the administrator acts in a fiduciary capacity, the case law in this Circuit clearly establishes that the plaintiff has the burden of proving her claim for disability benefits." *Bloom*, 558 F. App'x at 856. Nevertheless, under certain circumstances, the Eleventh Circuit has recognized that "an administrator may well have a fiduciary duty to seek out the location of and consider omitted documents referred to in the record where it is apparent that the document would provide significant support for the claimant's claim." *Id.* As explained, Plaintiff did not identify any treatment provider other than Dr. Lopez on her LTD claim form and consistently denied there were any other treatment providers from which Defendant should seek information. Under these circumstances, the Court concludes Defendant had no duty to independently request records from Dr. Gonales.

Plaintiff's grievance that Defendant did not make adequate attempts to contact Dr. Lopez is also without merit. With respect to Plaintiff's LTD claim, Defendant contacted Dr. Lopez on September 11, 2019, October 10, 2019, and October 30, 2019, requesting further support and clarification concerning Plaintiff's conditions and limitations. (*See* A 462–63, 509–10, 513–14; *see also* A 540 (explaining Defendant did not continue outreach to Dr. Lopez regarding an October 11, 2019 office visit because it was outside the "relevant time period for review[,]" but noting a Nurse Case Manager spoke to Dr. Lopez's office in November 2019 (alteration added)). Further, Dr. Burke called Dr. Lopez twice to conduct a peer-to-peer discussion, but his messages were not returned. (*See* A 552, 566).

Dr. Richardson likewise attempted to conduct a peer-to-peer discussion with Dr. Lopez. He called Dr. Lopez's office on January 21, 2020 and was instructed to fax any questions to Dr. Lopez. Dr. Richardson sent a fax to Dr. Lopez on January 22, 2020 but had not received a response by the time Defendant rendered its appeal decision on March 5, 2020. (*See* A 566, 580–81). Thus, Plaintiff's contention that Defendant did not adequately follow up with Dr. Lopez is belied by the record.

Plaintiff next asserts Defendant did not sufficiently credit Dr. Lopez's opinion, cherry-picked information from the medical record to downplay the severity of Plaintiff's condition, and unreasonably relied on the opinions of its reviewing physicians. (*See* Resp. 11–16). Contrary to Plaintiff's argument, "administrators are not obliged to accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). While an administrator "may not arbitrarily refuse to credit a claimant's reliable evidence," *id.* at 834, "where [the plaintiff]'s own doctors offered different medical opinions than [the administrator's] independent doctors, the [] administrator may give different weight to those opinions without

acting arbitrarily and capriciously[,]" *Blankenship*, 644 F.3d at 1356 (alterations added; citations omitted). *See also Oates v. Walgreen Co.*, 573 F. App'x 897, 909 (11th Cir. 2014) (explaining that a plan administrator is not required to accept the opinions of the claimant's treating physicians over those of its independent medical professional, even where the independent medical professional's opinion is based on a review of claimant's file and not a physical examination); *cf. Nord*, 538 U.S. at 834 ("[N]or may courts impose on [] administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." (alterations added; footnote call number omitted)).

There is nothing in the administrative record that leads the Court to conclude Defendant acted unreasonably in crediting its reviewing physicians' opinions over the opinion of Dr. Lopez. Drs. Predanic, Souayah, Burke, Richardson, and Belcourt each thoroughly reviewed Dr. Lopez's office visit notes, Behavioral Health Questionnaires, and Medical Request Forms. They noted several inconsistencies in Dr. Lopez's opinion and concluded the objective medical evidence did not support a finding that Plaintiff was disabled or functionally limited in such a way as to prevent her from working her regular job. Nor does the administrative record suggest Defendant or the physician reviewers cherry-picked information that supported their conclusions. To the contrary, the record, the physician reviewers' opinions, and Defendant's denial letters reflect a thorough review and balanced consideration of the medical records, Dr. Lopez's opinions and notes, and Plaintiff's reported symptoms and activities.

For example, with respect to Plaintiff's anxiety and depression — the conditions cited by Plaintiff as the reason she could not work — Dr. Predanic noted that while Dr. Lopez noted Plaintiff "was in the midst of the worst depressive episode in her life" and experiencing "lots of anxiety[,]" the same office visit note from May 13, 2019 stated Plaintiff had "no depressive

symptoms; no anxiety noted, [and she] sleeps well[.]" (A 436 (alterations added; quotation marks omitted); *see also* A 206). In addition, the Behavioral Health Questionnaires and Medical Request Forms, which indicated Plaintiff continued to suffer "severe psychomotor depression" and was "unable to function in any setting[,]" were inconsistent with Dr. Lopez's office visit notes documenting improvements and Plaintiff's Disability Questionnaire describing her regular activities. (A 437 (alteration added; quotation marks omitted); *see also* A 502).

Dr. Predanic also considered Plaintiff's reported improvements of both her depressive and anxiety symptoms on the third antidepressant she tried, Trintellix. (*See* A 436). Plaintiff's mental status exams were all normal, and Dr. Lopez's conclusory notations that Plaintiff had a depressed mood and anxious affect were not clarified or described. (*See id.*). Likewise, Dr. Richardson noted Plaintiff's mental status exam findings were within normal limits and her neurological exam indicated no cognitive impairments. (*See* A 580). Given these observations, Drs. Predanic and Richardson concluded Plaintiff's depression and anxiety did not limit her functioning or preclude her from working. (*See* A 437, 580).

To ensure a thorough review, Defendant also considered Plaintiff's other conditions. Dr. Souayah reviewed Plaintiff's medical records and concluded Plaintiff's migraine condition was "stable" and "responding to headache medications." (A 448). Dr. Burke similarly observed Plaintiff's migraines had generally improved and at every examination with Dr. Lopez, her muscle strength, sensation, and coordination were intact. (*See* A 551). Dr. Belcourt's review focused on Plaintiff's other medical conditions, and he determined she "d[id] not require any medically necessary work activity restrictions." (A 555 (alteration added)).

Given the identified inconsistencies in Dr. Lopez's opinion, the objective medical evidence of Plaintiff's cognitive functioning, the low severity of treatment, the absence of records from a

treating psychologist or psychiatrist, Plaintiff's regular activities, and the sedentary nature of her regular occupation, the Court cannot conclude that it was unreasonable for Defendant to credit the physician reviewers' opinions over Dr. Lopez's opinion and deny LTD benefits.[6] Accordingly, Plaintiff has failed to meet her burden to demonstrate Defendant's decision was arbitrary and capricious.

Finally, Plaintiff argues Defendant operated under a conflict of interest that tainted its benefits decision, and Defendant denied Plaintiff LTD coverage "in order to protect [its] bottom line." (Resp. 18 (alteration added); *see id.* 18–20). Defendant acknowledges the presence of a structural conflict of interest as it "both insures the payment and makes the determination for eligibility for benefits[.]" (Mot. 18 (alteration added)). But a conflict of interest is "merely [] a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Blankenship*, 644 F.3d at 1355 (alteration added; citation and footnote call number omitted). "The burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Id.* at 1357 (alteration adopted; quotation marks and citation omitted). Moreover, as the Eleventh Circuit has made clear, "the presence of a structural conflict of interest is an unremarkable fact in today's marketplace." *Wright*, 844 F. App'x at 145 (alteration adopted; quoting *Blankenship*, 644 F.3d at

---

[6] The Court is also unpersuaded by Plaintiff's attempt to manufacture a discrepancy between the definition of disability Defendant used in making its benefits determination and the definition provided in the Plan. (*See* Resp. 13–15). As relevant here, a claimant is disabled under the Plan if her sickness renders her "unable to perform any or all of the material and substantial duties of his or her Regular Occupation[.]" (LTD Plan 052 (alteration added)). Defendant's decision letter explained its investigation sought to determine whether Plaintiff was "functionally limited in a way that would preclude [her] from returning to work in [her] regular occupation." (A 539 (alterations added); *see also* A 541 (stating Defendant sought "to determine if medical evidence supports the claim that [Plaintiff was] functionally unable to work in a sedentary capacity" (alteration added)). Upon review of Plaintiff's complete medical file, Defendant concluded she was not. (*See* A 541; *see also* A 566 (stating "the medical information on file is not supportive of continued disability as defined by the LTD policy")). The Court does not find Defendant's formulation of its inquiry "[in]congruent" with the definition of disability set forth in the Plan. (Resp. 15 (alteration added)).

19

1356); *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 120 (2008) (Roberts, C.J., concurring) ("[A] conflict of interest . . . is a common feature of ERISA plans." (alterations added)).

Plaintiff has offered nothing but conclusory statements to support her assertion that Defendant's decision was marred by conflict. This will not suffice. Plaintiff fails to demonstrate Defendant's "run-of-the-mill conflict" influenced its decision. *Wright*, 844 F. App'x at 145. In short, Defendant's ordinary structural conflict does not alter the Court's conclusion that Defendant reasonably denied Plaintiff's LTD claim.

## IV.     CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant, Life Insurance Company of North America's Motion for Summary Judgment **[ECF No. 18]** is **GRANTED**.
2. Final judgment will issue by separate order.

**DONE AND ORDERED** in Miami, Florida, this 21st day of September, 2021.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record